144 So.2d 751 (1962)
METAL BUILDING PRODUCTS COMPANY, Inc.
v.
FIDELITY AND DEPOSIT COMPANY OF MARYLAND (Hall and Cox Construction Company, Defendant in Call in Warranty and Third-Party Plaintiff).
FENESTRA, INCORPORATED
v.
FIDELITY AND DEPOSIT COMPANY OF MARYLAND (Hall and Cox Construction Company, Defendant in Call in Warranty and Third-Party Plaintiff).
Nos. 566, 567.
Court of Appeal of Louisiana, Fourth Circuit.
July 2, 1962.
Rehearing Denied October 4, 1962.
Certiorari Granted November 27, 1962.
*752 Phelps, Dunbar, Marks, Claverie & Sims, Sumter D. Marks, Jr., New Orleans, for Fidelity and Deposit Company of Maryland, defendant-appellant.
Robert C. Taylor, Baton Rouge, for Hall and Cox Construction Company, Defendant in Call in Warranty and third-party plaintiff, appellant.
William H. McClendon, Jr., Stuart A. McClendon, New Orleans, for Metal Building Products Co. Inc. and Fenestra, Incorporated, plaintiffs-appellees.
Before REGAN, YARRUT and SAMUEL, JJ.
YARRUT, Judge.
These two suits were consolidated and tried in the district court by stipulation of all parties.
For brevity herein, Metal Building Products Company, Inc. will be referred to as Metal Building Products; Fidelity and Deposit Company of Maryland, as the Bonding Company; Hall and Cox Construction Company, as the Construction Company; and Fenestra, Incorporated, as Fenestra.
Fenestra (successor of Detroit Steel Products Company), sued the Bonding Company (in suit No. 567) for $3,197.52, plus interest and 10% penalty for failure to pay within 30 days, per LSA-R.S. 38:2246 and LSA-R.S. 38:2247; alleging that the Construction Company, as general contractor, executed a building contract with Louisiana State Building Authority for the erection of a kitchen-dining-hall and boiler room at the State Industrial School at Scotlandville, with the Bonding Company as statutory surety on the bond.
Metal Building Products, for the same reason, sued the Bonding Company (in suit No. 566) for $1,007.50, plus legal interest and 10% penalty for failure to pay a demand within 30 days; alleging the same building contract; the same statutory bond; and that on September 17, 1956 it agreed with the Construction Company to furnish all labor and other costs of installing a roof-deck in the project.
After various exceptions were overruled, the Bonding Company filed an answer in each case, generally denying the claims of the respective Plaintiffs, and calling the Construction Company, a partnership, and the individual partners thereof, as third-party Defendants under their indemnity agreement.
The Construction Company and its individual partners answered this call, admitting in both suits the execution of the building contract, the bond as alleged, and its indemnity agreement with the Bonding Company.
In its answer to suit No. 567 of Fenestra, the Construction Company admitted the signature of its partner Ross E. Cox thereon, but denied the document was a contract between them; and further admitted having received certain material shipped by Detroit Steel Products Company which it used in the construction project.
In answer to the suit of Metal Building Products, the Construction Company admitted the satisfactory installation of the roof-deck, and the correctness of the amount of the claims, but indebtedness is *753 denied to either of Plaintiffs, but that Plaintiffs are indebted to it for amounts in excess of the amounts sued for. By third-party demands, the Construction Company sued Fenestra and Metal Building Products, in solido, for failure to deliver the proper metal windows; and Fenestra for damages for filing a lien in the sum of $6,437.00; and Metal Building Products for damages for filing a lien for $6,303.38.
The district court properly sustained pleas of prescription of one year to both claims for the damages for the filing of the liens; and properly overruled exceptions of vagueness to the third-party complaint, as well as the exceptions of no cause or right of action. Fenestra and Metal Building Products then answered denying the third-party demands of the Construction Company.
Separate judgments were rendered in favor of Plaintiffs against the Bonding Company, and in favor of the Bonding Company on its third-party actions, against the Construction Company; with dismissal of the third-party complaints of the Construction Company. All parties, except the Plaintiffs, have appealed.
These are the unquestioned facts:
The Louisiana State Building Authority employed E. B. Silverstein as project architect to prepare plans and specifications for a penal institution for delinquent colored youths, containing the following pertinent clauses, to-wit:
"* * * every Subcontractor agrees to be bound by the terms of the Agreement, the General Conditions, the Drawings and Specifications as far as applicable to his work, including the following provisions of this article, unless specifically noted to the contrary in a subcontract approved in writing as adequate by the Owner or Architect.
* * * * * *
"The Subcontractor agrees
"(a) To be bound to the Contractor by the terms of the Agreement, General Conditions, Drawings and Specifications. * * *
* * * * * *
"STEEL WINDOWS

"Manufacture: Windows shall be of types indicated on drawings and shall be product of Truscon Steel Company, or other approved standard manufacture.
"Windows and screens shall be furnished to accord with sizes and details shown on drawings, and shall be constructed in accordance with manufacturer's printed specifications for the type indicated.
* * * * * *
"All materials, equipment, etc., installed under this contract, shall conform to all rules, codes, etc., as recommended or adopted by the National Association governing the manufacture, rating and testing of such materials, equipment, etc.
* * * * * *
"Heavy intermediate louver steel windows with full height inside screens.
* * * * * *
"Steel Donovan Awning windows with full ht. screens and concealed shaft operators. See Sheets No. 4 and No. 5 for details of shaft in wall. * * *"
The Construction Company obtained a copy of the plans and specifications, thus indicating its intention to bid on the project, as did other general contractors.
At the time Detroit Steel Products Company (since succeeded by Fenestra) was not qualified to do business in Louisiana. Metal Building Products was a Louisiana corporation. W. J. Sturgeon, as district manager then of Detroit Steel Products *754 Company, after examining the plans and specifications, prepared and mailed copies of its bids to eleven general contractors, including the Construction Company, which he signed on behalf of both Detroit Steel Products Company and Metal Building Products.
Regarding his capacity, when discussing the proposals with the general contractors, Mr. Sturgeon testified:
"I probably said I was representing Fenestra Detroit Steel Products. I could very well have said the other.
* * * * * *
"I could conceivably have quoted this in Metal Products' name but then I would not have a bona fide price in erection.
* * * * * *
"I could conceivably have quoted erection for Metal Building Products."
Mr. Thad Floyd, President of Metal Building Products, admitted that Detroit Steel Products made the proposal for Metal Building Products Company, as its agent.
Mr. Cox, manager of the Construction Company, testified that Metal Building Products inquired about its bids on the Metal windows and roof-deck, and he informed them their bids had been accepted, which was followed by a purchase order for the roof-deck and labor to install, and a written subcontract for the furnishing and erection of the roof-deck, all of which were received by Metal Building Products without objection or protest. The prices in both purchase orders were identical with their telephone sub-bids.
About July 15, 1955, Mr. Sturgeon and Mr. Morrow (the latter Vice-President of Metal Building Products) appeared at the office of the Construction Company with the purchase order relative to the windows, and requested a change of the name on the purchase order to Detroit Steel Products Company, in care of Metal Building Products, which was done.
On December 22, 1955, the Construction Company wrote Metal Building Products and Detroit Steel Products Company, outlining the penal clauses in the general contract and demanding delivery of the windows. When Metal Building Products and Detroit Steel Products Company refused to deliver the windows they bid for, the Construction Company contacted their second low bidder, Truscon Steel Division of Republic Steel Company, which re-affirmed its original bid to furnish and install the windows for $14,750.00, and was awarded the contract. Truscon's bid was made up of $11,321.65 for material and freight, and $3,428.35 for erection.
The Construction Company admitted it could have installed the windows for $427.50, the cost it calculated when making its bid to the owner. Sturgeon in his telephone bid with Mr. Evans had quoted a price of $770.00 to install these windows.
The issues presented are: (1) Did Metal Building Products and Detroit Steel Products Company separately or jointly agree to sell and install the metal windows? (2) Was there a binding contract between the Construction Company and the subcontractors? (3) Were the subcontractors in default? (4) What was the loss sustained to the Construction Company upon their default?
There is no doubt that the only windows considered by any of the parties were windows for use in the construction of the State Industrial School for colored juvenile delinquents.
The proposal to sell the windows was accepted for the Construction Company by Mr. Cox when he verbally informed Metal Building Products that their bid was low, and the necessary purchase orders would follow by mail, which was done.
From the evidence we must conclude:
(1) That Metal Building Products and Detroit Steel Products Company dealt with the Construction Company in a joint *755 venture, and became jointly bound for the subcontract performance, notwithstanding they did have the Construction Company apportion between them the furnishing of material and labor. LSA-C.C. Art. 2080. See 25 T.L.Rev. 382.
(2) There was a binding agreement between the Construction Company and the subcontractors. The evidence given by several general contractors preponderates that it is a well-known custom and practice in the trade that a subcontractor's bid continues unless withdrawn upon reasonable notice before the general contractor is awarded the contract. In this case the subcontractors' bids were specifically accepted and they were given purchase orders all without question or protest.
The expert testimony of the general contractors is that no particular form of bid is required. In many instances they are given, changed and awarded over the telephone. That the bid was given and accepted was proved by competent evidence, parol and documentary.
The courts of this state have recognized and applied the rule that acceptance may be made in several different ways, and ordinarily need not be express or formal, but may be shown by words, conduct, or acquiescence indicating an assent.
Delarosa v. Misuruca, 172 La. 190, 133 So. 441; Maestri v. Shafer Bros., 12 La. App. 117, 124 So. 603.
However, they now contend that no contract was to be effected until the architect approved their working sketches. This requirement was not a condition precedent to the creation of a contract, but only a requirement to insure that no improper material would be used in the construction. If construed otherwise, a subcontractor could withdraw a losing bid by deliberately submitting improper working sketches.
(3) The subcontractors were in default. The architect testified that the deficiency in the weight of the windows tendered by the subcontractors was unacceptable because the weight is a prime factor when installing windows in penal institutions.
There is nothing in the written offer to indicate any intention to furnish anything other than the windows and the roof-deck provided in the architect's plans and specifications. If Sturgeon intended to offer anything less, he was bound to explain the deviation. The Construction Company was not informed that Sturgeon was limiting his offer to intermediate windows, weighing only 3.2 pounds per lineal foot, rather than the heavy intermediate windows, weighing 3.5 pounds per lineal foot, required by the plans and specifications and as designed by the project architect.
In Reimann Construction Co. v. Heinz, 17 La.App. 687, 137 So. 355, it was held:
"* * * but we find that the terms of the plumbing contract, with the exception of the price, were entirely included in the main contract and that the only thing left to be agreed upon between the parties was the price * * *."
And in Schorr v. Nosacka, 16 La.App. 20, 132 So. 524:
"We cannot understand how he (Nosacka, the offeror to a contractor to furnish the metal work for a construction job) could have formulated a bid, such as the one presented in this case, without qualifying it if he intended to except any part of the work called for by the plans and specifications. If, as he claims, he did not see the specifications, his action is all the more remarkable on that account. His bid was given to Schorr (general contractor) prior to his having obtained the contract from the bank (owner), and presumably Schorr's bid to the bank was influenced by Nosacka's estimate of the work which he undertook to do."
The case of Coburn Supply Company v. James E. Caldwell Company, 231 La. 1026, *756 93 So.2d 546, sets forth the jurisprudence with regard to what is required of a contractor or for a part of the work of a building contract, when the court said:
"He was bound by his subcontract to perform the work contracted under it according to the plans and specifications, just as Caldwell was bound in the principal contract."
(4) Regarding the extent of the damage, we do not believe the Construction Company properly sought to minimize its loss. It simply accepted the second low bid of Truscon Steel Division of Republic Steel Company for $14,750.00 for the material and cost of erection, broken down to $11,321.65 for material and freight, and $3,428.35 for erection, notwithstanding it admitted it could have erected the material for $427.50 in its bid to the owner. Hence, the Construction Company's cost, resulting from the subcontractors' default, should have been $11,321.65 for material and $427.50 for cost of erection (a total of $11,749.15), or a loss of only $3,000.85.
Hence, there should be judgment in favor of the Construction Company and against the subcontractors jointly for $3,000.85, less $1,007.50 admittedly due Metal Building Products (in case No. 566) for the joint account of both Plaintiffs, or a net amount due both of $1,993.35, plus a freight increase of $28.45, or a total of $2,021.80.
For the reasons assigned, the judgment of the district court in each case is set aside; and judgment rendered in Case No. 566 (354-230 of the district court) in favor of Hall and Cox Construction Company and against Metal Building Products Company, Inc. for $1,010.90, with legal interest from judicial demand, and all costs in both courts; and judgment rendered in Case No. 567 (350-724 of the district court) in favor of Hall and Cox Construction Company and against Fenestra, Incorporated for $1,010.90, with legal interest from judicial demand, and all costs in both courts.
Judgments set aside and rendered.