190 So.2d 75

Charles X. MILLER

v.

HOUSING AUTHORITY OF NEW OR-
LEANS and Pittman Construction
Company, et al.

J. J. CLARKE COMPANY, Inc.

v.

HOUSING AUTHORITY OF NEW
ORLEANS et al.

Nos. 47848–47850, 47852.

Jan. 17, 1966.

On Rehearing June 30, 1966.

Rehearing Denied Oct. 5, 1966.

Sessions, Fishman, Rosenson & Snellings, Cicero C. Sessions, New Orleans, for relator in 47848 and 47849.

Edgar Corey, George M. Leppert, New Orleans, for relator in 47850.

Deutsch, Kerrigan & Stiles, Malcolm W. Monroe, R. Emmett Kerrigan, New Orleans, for relator in 47852.

Edgar Corey, Geo. M. Leppert, Guste, Barnett & Little, Wm. J. Guste, Jr., John Pat. Little, James M. Colomb, Jr., Roy F. Guste, Robert A. Keily, Deutsch, Kerrigan & Stiles, R. Emmett Kerrigan, Malcolm W. Monroe, New Orleans, for respondents in 47848 and 47849.

Guste, Barnett & Little, Wm. J. Guste, Jr., John Pat. Little, James M. Colomb, Jr., Roy F. Guste, Robert A. Keily, Deutsch, Kerrigan & Stiles, R. Emmett Kerrigan, Malcolm W. Monroe, Sessions, Fishman, Rosenson & Snellings, Cicero C. Sessions, Edgar Corey, George M. Leppert, New Orleans, for respondents in 47850 and 47852.

FOURNET, Chief Justice.

We granted a writ of certiorari to review the judgment of the Court of Appeal, Fourth Circuit, 175 So.2d 326, on the application of Charles X. Miller, reversing the judgment of the trial court awarding him interest from date of judicial demand on an unpaid contract balance due him by Pittman Construction Company, and its sureties, Continental Casualty Company, Massachusetts Bonding and Insurance Company, New Amsterdam Casualty Company, and

American Automobile Insurance Company;[1] but in granting the application of Miller's surety, Maryland Casualty Company, we limited our consideration to Miller's claim to the aforementioned interest and its additional claim that the Court of Appeal erred in holding it liable for the tax lien filed by the United States Government on Pittman for withheld income taxes of Miller's employees he had failed to remit. We also limited that of Pittman to the award in its favor of $120—the cost of bonding a lien filed by one of Miller's materialmen—for which the Court of Appeal failed to render judgment against Maryland Casualty Company in solido with Miller.

Pittman, having been awarded a contract by the Housing Authority of New Orleans[2] dated March 6, 1953, to construct 81 buildings comprised of 508 dwelling units in the Desire Street Project, for which it was to receive $4,369,864, entered into two contracts with Miller on March 13, 1953, to do all the lathing and plastering; one

contract for the sum of $151,000 was unbonded, the other, for $260,000 was bonded by Maryland Casualty Company. Miller's work was substantially completed by the end of September, 1954, and it was officially accepted and approved by HANO as being satisfactory on January 1, 1955. On March 31, 1955, Miller recorded a lien against the Project for the balance allegedly due him under the contracts ($42,500) and additional compensation ($20,752.48) for extras plus costs; and on September 9, 1955, filed suit against HANO, Pittman, and its sureties seeking to recover same plus $10,400 for additional extras together with costs and interest from the dates when he completed the work or incurred the additional expenses.

Pittman is contending here, as it did in the courts below, that according to the terms of its contracts with Miller,[3] it was under no obligation to pay Miller his retainage until ten days had elapsed after it had been paid in full by HANO and Miller had furnished it evidence that all claims for labor

---

1. These parties will be referred to hereinafter as "Pittman."
2. This agency will be referred to hereinafter as "HANO".
3. Article XI. The pertinent provisions thereof are:
   "On the 10 day of each month, the Subcontractor shall present to the Contractor a statement of the work done during the preceding month, which statement when checked and approved by the Contractor, will be paid within 10 days after receipt of payment from the Owner, providing all progress of the work and payments for labor and material

used are satisfactory in general to the Contractor, less 10 per cent of each estimate to be retained until final payment, which shall be made within 10 days after completion of the work included in this contract and written acceptance by the Architect and full payment therefor by the Owner, provided evidence has been furnished by the Subcontractor, if requested, that all claims for labor and materials are settled, and provided further that all the provisions of this contract have been complied with to the satisfaction of the Contractor."

and material had been settled; and that in any event, the most Miller was entitled to was $41,001.52, after deducting backcharges and payments previously made as the work progressed. It further answered by stating that not even this amount was due as (1) two duly recorded claims on the Project for materials furnished on the bonded contract had been filed by J. J. Clarke Co., Inc., in the amount of $5,408.68 and Schwartz Supply Company, Inc., for $4,139.28, plus interest and costs and (2) also of record was a levy by the United States Government ment in the sum of $22,646.81, which was served on Pittman for taxes owed by Miller which he had withheld as income tax deductions from earnings of his employees. It reconvened against Miller and filed a third-party petition against Maryland Casualty Company for the amount of the backcharges, the sum of $6,560 expended for bond premiums and attorney fees to have the liens cancelled and various claims against it defended, and for any other amounts owed by Miller as they became due.

Miller maintains the Court of Appeal erred in denying him interest on his claim from judicial demand as Pittman, by that same court in the case of Pittman Construction Company v. Housing Authority of New Orleans, La.App., 169 So.2d 122, (certiorari denied by this court on February 5, 1965) had been awarded interest from judicial demand on the 10% retained by HANO,

which includes the amount Pittman owes Miller, and also awarded Pittman's subcontractors who intervened in that suit, interest from judicial demand on their respective claims. In that case, the Court of Appeal, Fourth Circuit, in resolving that issue, remarked : *"Pittman * * * concedes that if it is allowed interest from date of default on the amounts due it by HANO, the subcontractors would be entitled to recover interest against it from the same date."* (Emphasis supplied.)

However, counsel for Pittman claim that "Miller is not in an 'identical position' with those subcontractors who were before the Court of Appeal in Pittman vs HANO, (supra) and that Court's decrees awarding those subcontractors their claims for retainage plus legal interest from judicial demand, are not controlling here," asserting that while Pittman was willing for those subcontractors to be paid interest from judicial demand in the event of its success in collecting interest on the amount owed it by HANO, it was not willing to make the same concession in the instant case because of Miller's "attitude in this proceeding" evidenced, among other ways, by his filing a separate suit and being unwilling to have his claim adjudicated with the other subcontractors in Pittman's suit against HANO.

Obviously the stipulation in the contracts on which Pittman is relying, (which was included in all of its Desire Street Project

subcontracts) was for its own protection in the event final payment to it would be upheld by HANO, for at the time of their execution, Pittman could not have recovered interest under the law of this state as it then existed. Boxwell v. Department of Highways, 203 La. 760, 14 So.2d 627; Makofsy v. Department of Highways, 205 La. 1029, 18 So.2d 605; Hamberlin v. Tangipahoa Parish School Board, 210 La. 483, 27 So.2d 307; Jefferson Lake Sulphur Company, Inc. v. State, 213 La. 1, 34 So.2d 331; State v. Walker, 233 La. 687, 98 So.2d 153. However, during the protracted litigation involving this Project, the Legislature of 1960 authorized an amendment to Article 3, Section 35 of the Constitution of 1921 by Act No. 621 which was adopted by the electorate on November 8, 1960, relieving the State and its subdivisions from immunity from liability as well as interest. Pittman Construction Company v. Housing Authority of New Orleans, supra; Hamilton v. City of Shreveport, 247 La. 784, 174 So.2d 529.

That this is the construction Pittman placed on its own contracts is evidenced by the statement in its brief filed in the Court of Appeal while the case under consideration was pending there, to wit:

"In the case of Pittman Construction Company v. the Housing Authority of New Orleans, 169 So.2d 122 * * *, this Court (Fourth Circuit Court of Appeal) held that Pittman was entitled to recover from

HANO legal interest on the retainage which had been due the prime contractor since June 10, 1955.

"If that judgment in favor of Pittman for interest on its retainage were to remain effective, and Pittman were to receive from HANO payment of that interest, Pittman would have no objection to the district court's award of interest to Miller. However, HANO's petition for writs is pending before the Supreme Court, and even the award of interest to Pittman is not now conclusive." (Emphasis supplied.)

We therefore conclude the Court of Appeal erred in denying Miller legal interest on the entire amount retained by Pittman from judicial demand.

Pittman's argument that it was not obligated to pay Miller his retainage until the two liens recorded against the Project by the latter's materialmen had been satisfied, comes will ill grace on its part because it was paid interest from judicial demand on the entire 10% retained by HANO which includes the amount due Miller, and under the terms of its contracts with Miller it reserved the privilege of paying such amounts without notice to him.

Maryland Casualty Company, in resisting that part of the judgment of the Court of Appeal rendering it solidarily liable with Miller for the amount Pittman and its sureties might be liable to the United States Government to satisfy a levy served by the

Government on Pittman for withholding taxes due by Miller on earnings of his employees, asserts Miller's failure to remit the withheld taxes cannot be considered a default in the performance of his bonded contractual obligation which merely guaranteed that Miller would furnish and pay for all labor and material, turn the work over free and clear of all claims, encumbrances, and liens for labor or material and protect the contractor and owner from all claims, encumbrances and liens growing out of the performance of the contract.

■ A mere reference to the pertinent provision of the Internal Revenue Code of 1954 [4] will readily disclose that the lien in favor of the United States is not a "lien" within the contemplation of the performance and lien bond furnished Miller by Maryland Casualty Company, hence the latter should not be liable for its satisfaction. The lien imposed for failure to pay such taxes rests upon all property and rights to property belonging to the person who is liable and failed to pay such taxes, who in this case is Miller; therefore, it is apparent that neither the prime contractor —Pittman—nor the owner of the Project— HANO—can be liable. See, United States v. Crosland Construction Company, 217 F.

2d 275; Central Bank v. United States, 345 U.S. 639, 73 S.Ct. 917, 97 L.Ed. 1312.

■ Pittman maintains, and properly so in our opinion, that the Court of Appeal in rendering judgment in its favor against Miller erred when it failed to make his surety, Maryland Casualty Company, solidarily liable for the sum of $120 expended by it as a premium to bond the lien recorded by Schwartz Supply Company, Inc., one of Miller's materialmen.

For the reasons assigned, the judgment of the Court of Appeal, Fourth Circuit, as hereinbelow detailed, is in part reversed and amended:

1. Insofar as it denied Charles X. Miller interest from judicial demand on the $41,001.52 retained by Pittman Construction Company under the terms of their contracts, it is reversed; and, it is now ordered, adjudged and decreed that the judgment be amended by granting Miller legal interest on the amount retained ($41,001.52) by Pittman Construction Company from judicial demand until paid.

2. It is further ordered, adjudged and decreed that that part of the judgment in favor of Pittman Construction Company and its sureties against Charles X. Miller

---

4. Section 6321 under the heading of "Subchapter C—Lien for Taxes" provides:
   "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

for the sum of $120 for the cost incurred in canceling the lien recorded by Schwartz Supply Company, Inc., is hereby amended by making this amount payable by Charles X. Miller and his surety, Maryland Casualty Company, in solido.

3. The judgment of the Court of Appeal insofar as it affirms the district court in casting Maryland Casualty Company in solido with Charles X. Miller for the tax levy served by the United States Government on Pittman Construction Company is reversed.

All costs in this court are to be paid by Pittman Construction Company and its sureties.

HAWTHORNE, J., absent.

On Rehearing.

HAWTHORNE, Judge.

A rehearing was granted to review the correctness of our decision insofar as it reversed the judgment of the Court of Appeal awarding interest to Charles X. Miller on his demand against Pittman for the retainage held by Pittman under the terms of their contracts. The Court of Appeal had held that any interest due to Charles X. Miller should begin to run 10 days after final payment was received by Pittman Construction Company from the

Housing Authority of New Orleans.[1] The basis of this holding was Article XI of the subcontract between Pittman and Miller which "imposes an obligation of making final payment on the subcontract within 10 days after (1) completion of the work, (2) acceptance by the architect, and (3) *full payment for the work by the owner*. The contract is not ambiguous and its simple effect is to make payment by the owner to the prime contractor a suspensive condition to the prime contractor's obligation to make payment to its subcontractor. * * * In view of the foregoing conclusion, interest shall only begin to run in favor of Miller ten days after the Housing Authority has made final payment to Pittman." See 175 So.2d 326, at p. 331.

This court reversed the judgment of the Court of Appeal as follows:

"1. Insofar as it denied Charles X. Miller interest from judicial demand on the $41,001.52 retained by Pittman Construction Company under the terms of their contracts, it is reversed; and, it is now ordered, adjudged and decreed that the judgment be amended by granting Miller legal interest on the amount retained ($41,001.52) by Pittman Construction Company from judicial demand until paid."

The basis of this reversal of the Court of Appeal judgment was a concession made by Pittman in its brief in that court as follows:

1. HANO paid Pittman on March 22, 1965.

" 'In the case of Pittman Construction Company v. The Housing Authority of New Orleans, [La.App.] 169 So.2d 122 * * *, this Court (Fourth Circuit Court of Appeal) held that Pittman was entitled to recover from HANO legal interest on the retainage which had been due the prime contractor since June 10, 1955.

" 'If that judgment in favor of Pittman for interest on its retainage were to remain effective, and Pittman were to receive from HANO payment of that interest, *Pittman would have no objection to the district court's award of interest to Miller*. However, HANO's petition for writs is pending before the Supreme Court, and even the award of interest to Pittman is not now conclusive.' (Emphasis supplied.)[2]

"We therefore conclude the Court of Appeal erred in denying Miller legal interest on the entire amount retained by Pittman from judicial demand."

On application for rehearing Pittman pointed out that an examination of the district court's award of interest to Miller, which was the basis of its concession, would show that this court enlarged and extended the concession beyond its actual meaning and significance. The district court's award of interest was not on the whole retainage by Pittman from Miller, but was on the sum resulting after deduction from that retainage of certain items which it found Pittman was entitled to withhold from the final payment to Miller. That judgment insofar as pertinent read:

"IT IS ORDERED, ADJUDGED AND DECREED, that Charles X. Miller recover from Pittman Construction Company * * * the sum of $41,001.52, less the following:

"1—A sum sufficient to satisfy and discharge the levy served by the United States Government on Pittman Construction Company for taxes, penalties and interest owed the United States by Charles X. Miller * * *;

"2—The amount paid or payable by Pittman Construction Company to satisfy the judgment rendered in favor of August A. Wegmann, Receiver of J. J. Clarke Co., Inc.; and

"3—The sum of $4,139.28 necessary to satisfy and discharge the lien filed by Schwartz Supply Company, Inc., which sum shall be paid to Schwartz Supply Company, Inc., and/or its assignee;[3]

"together with *legal interest on the resulting net amount* from September 9, 1955 [date of judicial demand], until paid,

---

2. Certiorari was denied by this court on February 5, 1965, and the recovery of interest by Pittman became final. See La. App., 169 So.2d 122.

3. These deductions resulted from liens and claims against Miller in connection with the contract work caused by Miller's default which Pittman became obligated to pay.

and all costs of Charles X. Miller herein." (Italics ours.)

It is clear, therefore, that Pittman is correct in its contention that this court enlarged its concession because that concession contemplated only the interest award of the district court and that court awarded interest not on $41,001.52, but on $41,001.52 *less* the items deducted. Except for this concession of Pittman the Court of Appeal's award of interest according to the terms of the contract as to payment would be correct, but Pittman reaffirms in this court that it is willing to have interest run from judicial demand on the net amount of the district court judgment, and we shall render judgment accordingly.

Miller and Maryland Casualty have attempted to sustain the judgment of this court for interest on the whole retainage of $41,001.52 from date of judicial demand on grounds of unjust enrichment, equitable estoppel, and the argument that a debt may become due before it becomes payable and in that case interest runs from the time it becomes due rather than from the time it becomes payable. We do not regard any of these as persuasive.

The unjust enrichment argument stems from Pittman's recovery of interest from 1955 on the whole retainage in its judgment against HANO. Miller argues that Pittman will be unjustly enriched at his expense unless he likewise recovers interest on his whole retainage from the date of his judicial demand in 1955. An unjust enrichment argument cannot prevail in a case such as this where we have concluded that the contract between the parties established when the delay would commence in Pittman's performance of its obligation to pay Miller—10 days after Pittman received payment from HANO. See Civil Code art. 1935. Our Code makes it clear that the equitable doctrine of unjust enrichment can apply only when the parties have not contracted in regard to a matter. Otherwise the contract is the law between them. Civil Code arts. 1963–1965. There can be no justification, therefore, for our saying that the delay commenced in Pittman's performance of its obligation to pay Miller from the date of judicial demand. Hence Pittman cannot be regarded as enriching itself at Miller's expense.

Counsel fail completely to show how equitable estoppel can apply in this case so as to make binding as to Miller concessions made by Pittmann regarding interest in other litigation as to other subcontractors. They cite Keller v. Thompson (La.App. 1961), 134 So.2d 395, for the proposition that the concession made by Pittman as to the other subcontractors in other litigation ought to be persuasive here. True, the Keller case stands for the proposition that a question of law decided by an appellate court in one case is persuasive in other cases where the identical question is presented.

That case, however, could have no application to the issue here where, as demonstrated above, Pittman's concession was clearly limited as to Miller.

We are not impressed with the argument that under the authority of Consolidated Association Bank v. Foucher (1836), 9 La. 476, the final payment to Miller became due and interest began to run before it became payable. That case has no application to this one. We are now convinced, as was the Court of Appeal, that the provision making final payment to Miller conditioned upon Pittman's receiving its payment from HANO protected Pittman from being obligated to pay interest in the event the final payment was withheld by HANO.

For the reasons assigned the judgment of the Court of Appeal relating to interest due Miller is set aside, and the judgment of the district court insofar as it awarded to Miller "legal interest on the resulting net amount from September 9, 1955, until paid" is reinstated and made the judgment of this court. All costs in this court in the proceedings relating to interest on the judgment in favor of Miller are to be paid by Charles X. Miller and Maryland Casualty Company.

FOURNET, C. J., dissents and assigns written reasons.

HAMITER, J., dissents, he being of the opinion that the judgment rendered by this court on the original hearing was correct and should be reinstated.

## ON REHEARING

FOURNET, Chief Justice (dissenting).

The author of the majority opinion on rehearing has obviously misconstrued the original opinion in this case, of which I was the author, as reflected by his statement that "The basis for this reversal of the Court of Appeal judgment was a concession made by Pittman in its brief * * *."

In the original opinion it was observed that the stipulation in Article XI of the subcontract which forms the basis of the majority opinion, and which is the identical one found in not only the Miller subcontract but that of all of the other subcontracts of Pittman on the HANO Desire Project—that is, that of the amount due the subcontractors by Pittman for work done and accepted on the Project, Pittman would retain 10% thereof, this amount being payable within 10 days after Pittman received final payment from HANO—was for Pittman's own protection in the event final payment to it would be withheld by HANO, for, under the law of this state existing when the subcontracts were executed by Pittman,[1] it could have collected

1. Section 35 of Article III of the Constitution of 1921.

no interest whatsoever from HANO. Consequently, the provisions of Article XI of the subcontract having no reference whatsoever as to when interest would be due on the 10% retainages in the case, could not form the basis of the decision of the appellate court in the instant case. It was only because Section 35 of Article III of the Constitution of 1921 was amended by Act 621 of 1960, during the period of Pittman's protracted litigation with HANO, that Pittman was able to recover interest from the time therein provided, i. e., from judicial demand, on the entire 10% owed Pittman that HANO had retained, and which amount concededly included the interest during this period on the $41,001.52 retained by Pittman from the amount it admittedly owed Miller for work completed and accepted by HANO on January 1, 1955, and that had been due Miller from that date. See, 169 So.2d 122, certiorari denied by this court February 5, 1965.

It was in that same litigation between Pittman and HANO that the right of certain subcontractors to their pro rata share of the interest thus secured from HANO, based *on the entire amounts* respectively due them but retained by Pittman, was at issue, and the basis for the appellate court's judgment resolving this question in favor of the subcontractors was that *"Pittman * * * concedes that if it is allowed interest from date of default on the amounts due it by HANO, the subcontractors would be en-*

*titled to recover interest against it from the same date,"* not from any provisions in Article XI of the subcontract agreements. (The emphasis has been supplied.)

Thus it may be seen that Pittman's concession was not one of *"willingness"* that the subcontractors should receive interest from judicial demand, but, instead, a concession that they would *"be entitled to recover"* interest from Pittman *"from the same date"* on the 10% Pittman had retained covering the various amounts due them. This is the concession that controlled in the judgment awarding all subcontractors other than Miller interest from judicial demand on the entire 10% Pittman retained from the amount due the subcontractors.

It was Pittman's own zeal to secure interest on the entire 10% HANO had retained of the amount it owed Pittman, and which included the various amounts Pittman had retained from the total due the several subcontractors for work done by them on the Desire project, including that retained from the amount due Miller, that Pittman placed this judicial interpretation on its own contracts with these subcontractors.

It is thus obvious that all subcontractors of Pittman on the Desire Project, with the single exception of Miller, have been awarded interest from judicial demand *on the entire 10%* retainage by Pittman, irrespective of any claims against these subcontractors, whereas Miller is here being awarded interest from judicial demand *only*

*on the net amount of the 10%* Pittman retained from the money owed Miller after claims against Miller were deducted. This distinction is not being made because this is the law, but because, as pointed out in the majority on rehearing, *"Pittman reaffirms in this court that it is willing to have interest run from judicial demand on the net amount of the district court judgment,* and we shall render judgment accordingly." (The emphasis has been supplied.)

Miller is thus being penalized not under any legal hypothesis, but merely because Pittman is peeved with Miller because, as pointed out in the original opinion, *while Pittman was willing for the other subcontractors "to be paid interest from judicial demand * * * in the event of its success in collecting interest on the amount owed it by HANO," Pittman "was not willing to make the same concession" to Miller because of Miller's attitude, as evidenced in particular "by his filing a separate suit and being unwilling to have his claim adjudicated with the other subcontractors in Pittman's usit against HANO."* (The emphasis has been supplied.)

It is certainly illegal and illogical to allow Pittman to retain all of the interest piled up on the $40,001.52 owed Miller over a period of more than 10 years, and *which HANO paid to Pittman on this entire amount,* and, at the same time to deny Miller the share of this collected interest that is allocable to the $41,001.52 Pittman admittedly owed him and had withheld from him since January 1, 1955.

If it is legally and logically sound for Pittman to deduct from the 10% retainage due Miller the amount of claims against Miller arising out of work done on the Desire Project before figuring the amount of interest Pittman should pay Miller on this $41,001.52, then HANO should just as legally and logically have been permitted to deduct from the 10% retainage due Pittman the amount of claims against Pittman arising out of work on this same project, including the $41,001.52 due Miller, before *tractors in Pittman's suit against HANO."* should have paid Pittman on the 10% retainage due it.

To permit Pittman to thus enrich itself at the expense of Miller is not only most inequitable, but in direct contravention of the moral maxim "that no one ought to enrich himself at the expense of another." Article 1965 of the Revised Civil Code. According to the majority opinion, Pittman will receive in excess of $20,000 of interest allocable to the $41,001.52 which was not due Pittman since it had not earned it, but which Pittman was only holding for Miller for work done by him on the project that was completed and accepted, and, at the same time, Miller, during this entire period, is being compelled to pay interest on materials used by him in this project under a lien. This conclusion is not only illogical and unjust, but also unconscionable.