**AESCO STEEL, INC.**

v.

**J.A. JONES CONSTRUCTION COMPA-NY and Fidelity and Deposit Company of Maryland.**

No. 85–0903.

United States District Court, E.D. Louisiana.

Nov. 29, 1985.

H. Bruce Shreves, Simon, Peragine, Smith & Redfearn, New Orleans, La., for plaintiff.

William W. Messersmith, Deutsch, Kerrigan & Stiles III and Terrence L. Brennan, New Orleans, La., for defendants.

## ORDER & REASONS

CHARLES SCHWARTZ, Jr., District Judge.

This matter is before the Court on the motion of plaintiff, Aesco Steel, for summary judgment and the motion of defendants, J.A. Jones Construction Company, now known as the Jones Group Inc. ("Jones"), and Fidelity Deposit Company of Maryland for summary judgment. There being no disputed issues of fact, the parties having stipulated to all pertinent facts for the purpose of this motion, the motion of Aesco Steel is GRANTED; the motion of J.A. Jones Construction Company, now known as the Jones Group Inc., and Fidelity Deposit Company of Maryland is DE-NIED.

*Facts*

The parties have stipulated to the following material facts for the purpose of this motion. Jones, as contractor, entered into a construction contract with the Louisiana World Exposition, Inc. ("LWE"), as owner, on October 1, 1982, for work in connection with the construction of the International Pavilion, the U.S. Pavilion and Amphitheater at the 1984 Louisiana World Exposition. A notice of that contract was filed in the Mortgage Office for the Parish of Orleans at M.O.B. 2387, Folio 792, on October 1, 1982.

Jones as principal and defendant Fidelity & Deposit Company of Maryland ("F & D"), as surety executed payment and performance bonds in the amount of $23,916,-581. On September 28, 1983, Aesco Steel, Inc. ("Aesco") as subcontractor, and Jones, as contractor, entered into a subcontract in the amount of $1,592,645 wherein Aesco agreed to furnish the structural steel and metal floor deck for the Amphitheater Project. The subcontract was executed on Jones' subcontract form. Six change orders to the subcontract were issued increasing the subcontract price to $1,844,-949.

Several change orders were issued by LWE to Jones increasing the contract price to $39,693,298. Jones has received payment in the aggregate amount of $34,843,-101, leaving an unpaid contract balance of $4,850,197.

The construction contract between LWE and Jones was successfully completed by Jones. Aesco fully performed its subcontract with Jones. A certificate of substantial completion was executed by representatives of LWE and Jones on May 1, 1984. A Notice of Termination of the contract was filed in the Mortgage Records of Orleans Parish on May 30, 1985 at M.O.B. 2387, Folio 792.

Pursuant to the contract with LWE, Jones submitted to LWE Applications for Payment on a monthly basis and an Application for Final Payment seeking payment of retainage. Jones was paid in full for work billed and completed through March 1984. The April and May 1984 Applications for Payment and Retainage Withheld were not paid by LWE. To date, these remain either unpaid or partially unpaid.

On May 1, 1984, Jones paid Aesco $84,-000 in retainage. On July 10, 1984, Aesco, through its attorneys, made formal demand on Jones and F & D for the amount of $228,379.90. No payment was received by Aesco from either Jones or F & D within thirty days of the receipt of that demand. On September 11, 1984, Jones paid Aesco an additional $78,000 in retainage. Accordingly, when, on February 27, 1985, Aesco filed suit, the balance of the contractual obligation between Jones and Aesco was $149,852.40. After the filing of the suit, two payments were received from Jones by Aesco—one in the amount of $57,279.85 and the other in the amount of $11,479.19. Both of these amounts were paid on March 24, 1985. As of the date of the submission of this motion, the remaining unpaid subcontract balance was $80,320.73 of which Jones claims $22,244.40 is retainage.

In August 1984, Jones executed a Contractor's Joinder Agreement, which allowed LWE Contractors, such as Jones, to participate in certain revenues flowing from the Co-operative Endeavor Agreement dated July 1, 1984. Additionally, Jones entered into an agreement with the Rouse Company, Inc. ("Rouse") agreeing to grant a partial release of its lien on that portion of the International Pavilion which was purchased by Rouse. In exchange for this release, Jones was entitled to participation in the revenues generated by the Rouse purchase of LWE assets.

LWE experienced financial difficulties and filed a Chapter 11 Reorganization Proceeding (Bankruptcy Case No. 84–02314–K) on November 6, 1984. That case is still pending in the United States Bankruptcy Court for the Eastern District of Louisiana.

In an effort to recover the unpaid balances owed Jones by LWE, Jones has filed a Proof of Claim in the Bankruptcy Proceedings and is one of the contractors of the "Contractors Creditors Committee" in that proceeding. That Committee obtained an order authorizing the bringing of an

action and did bring an action in the name of LWE against certain officers and directors of LWE and their insurers. The Bankruptcy Court appointed an examiner to issue a preliminary report recommending that a preference action be filed seeking recovery of all payments made to contractors under the Co-operative Endeavor Agreement and the Rouse Agreement.

On June 22, 1984, Jones filed a lien which includes any amounts yet to be paid to Aesco. On June 28, 1985, Jones filed suit to enforce the lien in the Civil District Court for the Parish of Orleans, Case No. 85–11173.

Jones has paid Aesco all amounts paid to Jones by LWE and attributable to work performed by Aesco. Jones continues to pursue collections of monies owed to Jones by LWE under the contract by pursuing its claim in the United States Bankruptcy Court for the Eastern District of Louisiana.

*The Liability of the Contractor*

A J.A. Jones Construction subcontract form was executed by the parties in late October or early November 1983. The applicable section of that contract, Article 4, provides "[a] final payment, consisting of the unpaid balance of the Price, shall be made within forty-five (45) days after the last of the following to occur: (a) full completion of the Work by Subcontractor, (b) final acceptance of the work by the Architect and Owner[,] (c) final payment by Owner to Contractor under the Contract, (d) the furnishing of satisfactory evidence by Subcontractor to Contractor that the Subcontractor has paid in full all persons furnishing labor, materials or service in connection with the Work and that neither Subcontractor nor any person claiming under or through Subcontractor has filed or has the right to maintain a lien or other claim against the Owner, the Contractor,

Contractor's surety, if any, or the Project premises, (e) the return of all drawings, plans and specifications to the Contractor or Architect, and (f) the delivery of all guarantees, warranties, bonds, instruction manuals, performance charts, diagrams, *as built* drawings and similar items with respect to the Work."[1] The parties agree that all of the enumerated items in Article 4 have been fulfilled but for Section (c), "final payment by Owner to Contractor under the Contract." The owner, LWE, has been unable or unwilling to make final payment and is presently involved in a still pending Chapter 11 Reorganization proceeding in the United States Bankruptcy Court for the Eastern District of Louisiana.

Although both parties concede that Aesco satisfactorily completed its portion of the work on the contract before May 30, 1984, Jones claims that, since it has not received final payment from LWE and since it has paid Aesco all amounts LWE has paid Jones for the work performed by Aesco, the balance of payments under the subcontract are not yet due to Aesco. In other words, Jones claims that each of the six items enumerated in Article 4 of the subcontract are suspensive conditions under Louisiana law. LSA–C.C. Art. 2043.[2] Aesco, conversely, urges that the language of Section (c) rather than being a conditional obligation as defined in Civil Code Articles 2021 and 2043 merely outlines a method of payment.

A review of Louisiana case law reveals that there is support for both contentions. In *Miller v. Housing Authority of New Orleans*, 175 So.2d 326 (La.App. 4th Cir. 1965) *aff'd in part, rev'd in part* (on other grounds), 249 La. 623, 190 So.2d 75 (1966), the Court found a clause in the subcontract reading, in pertinent part, "progress payments will be made to Miller, based on

---

1. Change order "One", dated October 27, 1983, alters this provision by providing that "[s]o much of Article 4, 'Final Payment', 1st Sentence, as reads, 'Shall be made within forty-five (45) days', is hereby amended to read, 'Shall be made within thirty (30) days'." [sic] Since this alteration is not material to the question of whether or not the language in Article 4, Section (c), is a

condition, it is not discussed in this section of this Opinion.

2. The "suspensive condition," under this article, is the equivalent of the condition precedent at common law. *City of New Orleans v. Texas & P Railway Company,* 171 U.S. 312, 18 S.Ct. 875, 43 L.Ed. 178 (1898).

monthly estimates made by the contractor, 'within ten days after receipt of payment from the owner....' " to be a nonambiguous suspensive condition designed to prevent the contractor from assuming the obligations of financing the project in the event the owner was unable to do so. *Id.* at 331. Accordingly, the Court directed judgment in favor of the subcontractor, but conditioned upon payment of the contractor by the owner.

On the other hand, in *Subdivision Planning Engineering, Inc. v. Manor Development Group,* 290 So.2d 375, 379 (La.App. 4th Cir.1974) [procedural history after remand omitted], the Court held that a contract that read in pertinent parts, "said sum of $60.00 per lot is to be paid in three payments of $20.00 each, as the developer receives its payments" and "the remainder of the funds due you will, of course, only be paid to you as we receive funds under our owner-builder commitments," not to be a conditional obligation since the plaintiff was unconditionally obligated to provide its services. The Court held that rather than being a conditional obligation as outlined in LSA–C.C. Art. 2021, "the quoted provisions only outline a method of payment of the sums that will become due." *Id.* In *Pelican Construction Company v. Sewerage and Water Board of New Orleans,* 240 So.2d 556, 557–58 (La.App. 4th Cir.1970), the Court held that even if a clause providing for the subcontractor to pay the subsubcontractor "within five days after receipt of payment from owner" was a suspensive condition, the suit could not be dismissed without giving the plaintiff the opportunity to amend to show that the subcontractor prevented the condition from occurring or other circumstances entitling the subsubcontractor to recovery. The Court went on to comment that it had considerable doubt whether or not the clause in question was a condition and the Court urged there was a good argument that the clause was not a "term" of the contract and therefore the "reasonable time" provision of LSA–C.C. Art. 2050 could be imported into the contract. *Id.* at 558. In *Chartres Corporation v. Charles Carter and Company,* 346 So.2d 796 (La.App. 1st Cir.

1977), the Court citing *Pelican, supra,* interpreted a contractual provision providing that the "contractor may, at its option, retain 10%, or the percentage specified in the contract documents, of each estimate until final payment which shall be made after completion of the work covered by this contract and written acceptance thereof by the architect and full payment therefor by owner....", to mean that "such an insertion in a contract should not be construed to mean that payment would be subject to a suspensive condition but was more probably intended by the parties to require payment within a reasonable period of time and 'in the usual course of events.' " *Id.* at 797. In a more limited holding than is required by the facts here, the Court went on to say that it was unable to conclude that the parties intended that the defendant could always refuse to pay the plaintiff as long as any money was supposedly outstanding but limited that holding by stating that "some explanation should have been offered by the defendant as to why the inordinate time period ... had elapsed without payment by the owner and what efforts were being made ... to secure payment." *Id.* at 798.

■ Faced with these two lines of cases, and viewed in light of the fact that the *Miller* case has never been cited by another Louisiana appellate court in a reported decision for the proposition that such clauses are suspensive conditions, a Louisiana state court would feel free to choose between the two lines of cases. For the reasons which follow, this Court determines that, on the facts before it, the Louisiana courts would choose to follow the *Pelican-Chartres* line of cases as indicative of a modern trend. It is a general rule of construction to construe terms so as not to be conditions, especially conditions precedent or suspensive conditions wherever possible *Schexnayder v. Capital Riverside Acres,* 170 La. 714, 129 So. 139 (1930). *See Mitchell Engineering Company, Division of Seaco Corp. v. Ronald A. Goux, Inc.,* 413 So.2d 942 (La.App. 1st Cir.1982), *writ denied* 420 So.2d 173 (1982); *Metal Building Products Company v. Fidelity and Deposit Compa-*

*ny of Maryland,* 144 So.2d 751 (La.App. 4th Cir.1962) (requirement that architect approve working sketches of material man was not condition precedent but only a requirement to insure that no improper materials would be used); *cf., generally, F.C. Williams Real Estate v. Haydel,* 364 So.2d 171, 172 (La.App. 1st Cir.1978); *Dale's Jewelers, Inc. v. Rice,* 316 So.2d 416 (La.App. 2nd Cir.1975); *Sam's Style Shop v. Cosmos Broadcasting Corporation,* 694 F.2d 998, 1004 (5th Cir.1982) (discussing the requirement that "[o]ne who relies on a suspensive condition has the burden of proving the existence of the condition...."). There is also a general rule of construction to construe ambiguities against the drafter. *Muse v. Metropolitan Life Insurance Company,* 193 La. 605, 192 So. 72 (1939); *Kuhn v. Stan A. Plauche Real Estate Company,* 249 La. 85, 185 So.2d 210 (1966); *Miller v. Kellerman,* 228 F.Supp. 446 (W.D.La.1964), *aff'd,* 354 F.2d 46, *cert. denied,* 384 U.S. 951, 86 S.Ct. 1571, 16 L.Ed.2d 548 (1966); *Mills v. Fidelity & Casualty Company of New York,* 226 F.Supp. 786 (W.D.La.1964) *aff'd sub nom, Yuba Consol. Industries Inc. v. Fidelity & Casualty Company of New York,* 338 F.2d 341 (5th Cir.1964); *Rayford v. Louisiana Savings Association,* 380 So.2d 1232 (La. App. 3d Cir.1980) *writ refused,* 384 So.2d 793 (1980). Here, the contract was executed on Jones' own form. Since one of the interpretations of this clause could have been as a condition and another interpretation of this clause could have been as a term providing for payment within a "reasonable period of time", Jones, as drafter, had an obligation to make the provisions clear if it desired for this term of the contract to serve as a condition. Having failed to do so, this Court is constrained to construe the provision as a term providing for payment within a reasonable period of time.

Having determined that the contract provides for final payment within a reasonable period of time, we now turn to Jones' contention that that period of time has not yet elapsed and therefore there is no amount currently due and owing. What constitutes a reasonable time for performance of a contractual obligation under LSA–R.S. Art. 2050 must be determined by the circumstances of the particular case. *Owens v. Robinson,* 329 So.2d 766 (La.App. 2d Cir.1976); *Perrin v. Hellback,* 296 So.2d 342 (La.App. 4th Cir.1974), *writ denied,* 300 So.2d 184 (1974); *Wolfe v. Sample,* 141 So. 812 (La.App. Orleans 1932). The intent of the parties is an important factor in this determination. *Owens v. Robinson, supra.* Here, the subcontract itself provides for payment 30 days after the six items enumerated in Article 4 of the contract have occurred. See Subcontract, Art. 4 and Change Order "One". Having adopted the holdings of the *Pelican-Chartres* line of cases, this Court has interpreted that Article of the Contract to mean 30 days after the time those six events would have occurred in the ordinary or usual course of events. *Chartres Corp. v. Charles Carter & Co., supra,* at 797. An indication of what would constitute the usual course of events can be found in the bond. It provides for suit against the surety 90 days after completion of the work or, where there is no privity between the contractor and the supplier, notice of completion. Therefore, while the precise time for payment need not be determined for the purposes of this motion, it is clear that the intention of the parties was for payment by no later than late August 1984, 90 days after the filing of the Notice of Termination of Work by Jones.[3] Consequently, Jones' contention that the reasonable time for payment has not yet elapsed must be viewed as unsupported by the context and circumstances of this case.[4]

3. Actually, because there was privity of contract between Jones and Aesco, the payment was due 90 days after the date of actual completion. Since this Court has not been provided with that date, the Court has used May 30, 1984, the date on which the Notice of Termination of Work was filed and by which all parties agree the work was completed.

4. Had the context failed to provide an appropriate period, the provisions of LSA–R.S. 9:4822, providing for preservation of a claim by filing within 30 to 60 days, might have had to have been used. The use of that period would have caused the reasonable time for payment to have been even earlier than the date used in this Opinion.

## The Sureties' Obligation

The bond in question was executed on October 1, 1982. It is entitled a "Labor and Material Payment Bond", and Fidelity and Deposit Company of Maryland, defendant herein, is named as the surety. It reads in pertinent part:

2. The above named Principal [J.A. Jones Construction Company] and Surety [Fidelity and Deposit Company of Maryland] hereby jointly and severally agree with the Owner [Louisiana World Exposition Inc.] that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suits to final judgment for such sum or sums as may be justly due claimant, and have execution thereon. The Owner shall not be liable for the payment of any costs or expenses of any such suit.

3. No suit or action shall be commenced hereunder by any claimant:

(a) Unless claimant, other than one having a direct contract with the Principal, shall have given written notice to any two of the following: The Principal, the Owner, or the Surety above named, within ninety (90) days after such claimant did or performed the last of the work or labor, or furnished the last of the materials for which said claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were furnished or for whom the work or labor was done or performed....

(b) After the expiration of one (1) year following the date on which the Principal ceased work on said Contract,....

(c) Other than in a state court of competent jurisdiction ... or in the United States District Court for the district for which the project, or any part thereof, is situated and not elsewhere.

\* \* \* \* \* \*

In its caption, the bond specifically identifies its purpose. Underneath the title "Labor and Material Payment Bond," the bond has a note which reads: "Note: This bond is issued simultaneously with Performance Bond in favor of the owner conditioned on the full and faithful performance of the contract."

The bond is absolute on its face. Accordingly, the obligation which it secures is also absolute. The parties clearly intended for the surety and/or the principal to pay any claimant who had not "been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant." The only limitation imposed is upon claimants who did not have a direct contract with the principal. In that case, the contract provides for payment within ninety (90) days of notice. See Bond, Paragraph 3a.

The Louisiana Private Works Act LSA–R.S. 9:4801 *et seq.* provides, *inter alia,* for liability of owners and contractors for the improvement of an immovable. LSA–R.S. 9:4802 provides in pertinent part:

B. The claims against the owner shall be secured by a privilege on the immovable on which the work is performed.

C. The owner is relieved of the claims against him and the privileges securing them when the claims arise from the performance of a contract by a general contractor for whom a bond is given and maintained as required by R.S. 9:4812 and when notice of the contract with the bond attached is properly and timely filed as required by R.S. 9:4811.

\* \* \* \* \* \*

E. A claimant may assert his claim against either the contractor, his surety, or the owner without the joinder of the others. The claim

shall not be subject to a plea of discussion or division.

\* \* \* \* \* \*

In other words, the statute provides that the owner may, by requiring the contractor to execute a bond pursuant to LSA–R.S. 9:4812, relieve himself of personal liability for such claims, while failure to exact such a bond results in the owner being personally liable. LSA–R.S. 9:4812C is likewise absolute.[5]

■ Therefore the purpose of the Act is not only to protect the owner when it complies with the provision of the Act with respect to the recordation of a written contract and bond, but also to protect those who furnish the services, labor or material for construction. *Glassell, Taylor and Robinson v. John W. Harris Associates*, 209 La. 957, 26 So.2d 1 (1946), *see Fruge v. Muffoletto*, 242 La. 569, 137 So.2d 336 (1962). *Cf. L'Hote Lumber Manufacturing Company v. Joseph Dugue*, 2 Orleans App. 308 (1905) *aff'd in part, rev'd in part* (on other grounds) 115 La. 669, 39 So. 803 (1905) (discussing by implication the fact that the surety must absolutely bind himself to the full amount of the bond for the benefit of the beneficiaries of the statute). Accordingly, the statutory scheme could not work if an owner's failure to pay were always a defense to the contractor.

The contractor covenants with the owner to provide the construction services and to return the property without any liens. The contractor covenants with its subcontractors to repay them. Each of these obli-

gations is secured by a bond and that bond is recorded with the contract pursuant to the Act.

Defendants argue that the obligation of the surety is accessory to that of the principal under the bonded contract and, consequently, the liability of the surety can only be judged by the liability of the principal.[6] They cite *Graphic Arts Building Company v. Union Indemnity Company*, 163 La. 1, 111 So. 470 (1927), *Folse v. Maryland Casualty Company*, 193 So. 385 (La.App. 1st Cir.1940) and *Commercial Union Insurance Company v. Melikyan*, 430 So.2d 1217 (La.App. 1st Cir.1983) for this proposition.

■ Defendants' contentions that these cases control this matter miss the mark because the bonds are executed for the benefit of the owner to protect him from liability should the contractor fail to pay the subcontractors for material. In addition, the bonds are designed to protect the subcontractors from the insolvency of either the owner or the contractor. To allow the surety to assert as a defense that the owner has not made payments on the contract would defeat the statutory purpose as set forth above. Accordingly, this Court will not disturb the absolute language of the bond, which is merely reflective of the absolute language of the statute pursuant to which it was issued.

---

**5.** LSA–R.S. 9:4812C reads "The condition of the bond shall be that the surety guarantees: (1) To the owner and to all persons having a claim against the contractor, or to whom the contractor is conventionally liable for work done under the contract, the payment of their claims or of all amounts owed them arising out of the work performed under the contract to which it is attached or for which it is given. (2) To the

owner, the complete and timely performance of the contract unless such guarantee is expressly excluded by the terms of the bond."

**6.** The defendants argue that the liability of this surety is derivative from the liability of the contractor. Even if this were true, in light of the findings of the previous section of this Opinion, the surety would nonetheless be liable.