490 So.2d 647 (1986)
CAHN ELECTRIC COMPANY, INC., Plaintiff-Appellant,
v.
ROBERT E. McKEE, INC., Defendant-Appellee.
No. 17870-CA.
Court of Appeal of Louisiana, Second Circuit.
June 11, 1986.
*648 Wiener, Weiss, Madison & Howell by James R. Madison, Shreveport, for plaintiff-appellant.
Franklin, Moore & Walsh by Ray C. Dawson, Baton Rouge, for defendant-appellee.
Before FRED W. JONES, SEXTON and LINDSAY, JJ.
SEXTON, Judge.
Plaintiff appeals a judgment sustaining an exception of prematurity and dismissing its cause without prejudice. Concluding that the exception was improvidently sustained, we reverse and remand for a trial on the merits.
Plaintiff, Cahn Electric, contracted with Robert E. McKee, Inc., a general contractor, to furnish and erect all necessary electrical work for the teaching hospital addition at the LSU-Medical Center in Shreveport, Louisiana. The subcontract provided that McKee would retain five percent of all progress payments due to Cahn. The work was completed by Cahn in May 1984 and accepted by the owner.
Following the completion of the electrical work on the project, Cahn invoiced McKee for $119,462.95, representing the amount withheld by McKee under the terms of the subcontract agreement. McKee failed to pay the retainage invoice, and Cahn filed the instant action on April 24, 1985.
McKee opposed the suit with a dilatory exception of prematurity arguing that under the terms of the subcontract, payment of the retainage was not due until ten days after the general contractor had received final payment from the Division of Administration. McKee also filed a third party demand against the State of Louisiana, Division of Administration, alleging that it had completed the project but the Division of Administration had arbitrarily and capriciously failed to pay the balance due under the general contract. Therefore, McKee alleged that because of the failure to pay by the owner due to a dispute which arose over the adequacy of performance of another subcontractor's work, it had been unable to pay the other subcontractors their retainages.
The trial court sustained the dilatory exception of prematurity, finding that final payment was not due under the terms of the contract until the general contractor received final payment from the State of Louisiana as the receipt of payment from the owner was made a suspensive condition to the obligation of the general contractor to pay the subcontractor. Plaintiff has appealed, assailing the trial court's finding that the obligation to pay was subject to a suspensive condition.
Thus framed, the narrow issue presented for our consideration is whether, within the confines of the contract document, the subcontractor's claim for payment of retainages withheld by the general contractor is premature because of the owner's refusal to pay the general contractor.
The pertinent contractual provisions read as follows:

ARTICLE IV.
The Contractor agrees to pay the Subcontractor for the performance of its work the sum of Two Million Three Hundred Twenty Five Thousand Four Hundred Thirty Dollars ($2,325,430.00) in current funds, subject to additions and deductions for changes as may be agreed upon in writing, and to make monthly payments on account thereof in accordance with Article X, Sections 20-23, inclusive.

*649 Payments shall be made ten (10) days after payment by the Owner in installments of ninety-five (95%) percent of the value of the work provided and performed by the Subcontractor.
Applications for monthly progress payments shall be submitted (sic) to the General Contractor on or before the twenty-fifth (25th) day of each month and will show percent complete to date, amount earned to date, retainage involved, previous payments, and net amount due. Each increase or decrease order written to Subcontractor after the basic contract must be listed separetly to show percent complete for each of these on each month's pay request.
ARTICLE V.

Final payment shall be due when the work described in this contract is fully completed and performed in accordance with the Contract Documents, and payment to be consistent with Article IV and Article X, Sections 18.20-23 inclusive of this contract.
Before issuance of the final payment of the Subcontractor if required shall submit evidence satisfactory to the Contractor that all payrolls, material bills, and all known indebtedness connected with the Subcontractor's work have been satisfied notwithstanding any provisions of this Subcontract to the contrary. Final payment shall be due within ten (10) days after the Contractor receives final payment from the Owner.

ARTICLE X.
In addition to the following provisions, the parties also agree:
That the Subcontractor shall
* * * * * *
18. And does hereby agree that all work shall be done subject to the final approval of the Architect or Owner's authorized agent, and his decision in matters relating to artistic effect shall be final, if within the terms of the Contract Documents.
That the Contractor shall
* * * * * *
20. Pay the Subcontractor in seven (7) days, unless otherwise provided in the Contract Documents, upon the payment of certificates issued under the Contractor's schedule of values, or as described in Article IV herein. The amount of the payment shall be equal to the percentage of completion certified by the Owner or as authorized agent for the work of this Subcontractor applied to the amount set forth under Article IV and allowed to the Contractor on account of the Subcontractor's work to the extent of the Subcontractor's interest therein.
21. Permit the Subcontractor to obtain direct from the Architect or Owner's authorized agent, evidence of percentages of completion certified on his account.
22. Pay the Subcontractor on demand for his work and/or materials as far as executed and fixed in place, less the retained percentage, at the time payment should be made to the Subcontractor if the Architect or Owner's authorized agent fails to issue the certificate for any fault of the Contractor and not the fault of the Subcontractor or as otherwise provided herein.
23. And does hereby agree that the failure to make payment to the Subcontractor as herein provided for any cause not the fault of the Subcontractor, within seven (7) days from the Contractor's receipt of payment or from time payment should be made and provided in Article X, Section 22, or maturity, then the Subcontractor may upon seven (7) days written notice to the Contractor stop work without prejudice to any other remedy he may have."
[Emphasis supplied.]
The trial court relied upon Miller v. Housing Authority of New Orleans, 175 So.2d 326 (La.App. 4th Cir.1965), modified on other grounds, 249 La. 623, 190 So.2d 75 *650 (1966), which construed a contractual provision similar to the one quoted above. In that case, plaintiff, a subcontractor, instituted suit against defendant, a general contractor, for the ten percent retainage due under a subcontract agreement for lathing and plastering work. The general contractor filed a third party demand against the owner claiming that in the event defendant was forced to pay the retainage withheld under the subcontract agreement, the owner was liable to the general contractor under the prime contract. The general contract provided for a ten percent retainage of the total contract price by the owner from the general contractor in the event the project was not accepted. The subcontracts at issue contained similar provisions between the general contractor and the subcontractors. The subcontractor's work was accepted but the general contractor's work was not. The general contractor refused to pay the retainage to the subcontractor based on the owner's failure to pay.
As noted by the Miller court, the pertinent contractual provision read:
"Progress payments will be made to Miller, based on monthly estimates approved by the Contractor, `within 10 days after receipt of payment from the Owner * * *, less 10 per cent of each estimate to be retained until final payment which shall be made within 10 days after completion of the work included in this contract and written acceptance by the Architect and full payment therefor by the Owner, provided evidence has been furnished by the Subcontractor, if requested, that all claims for labor and materials are settled, and provided further that all the provisions of the contract have been complied with to the satisfaction of the Contractor.'"
The court construed the provision as imposing an obligation of making final payment on the subcontract within ten days after (1) completion of the work, (2) acceptance by the architect, and (3) full payment of the work by the owner. The court found that the contract was not ambiguous and its simple effect was to make payment by the owner to the prime contractor a suspensive condition to the prime contractor's obligation to make payment to its subcontractor. In so holding, the court noted:
This provision was obviously intended to prevent the prime contractor from being compelled to assume the obligation of financing the construction of the Project in the event of default by the owner. Therefore, we must give effect to the clear intention of the parties as agreed to, and we, as usual, refrain from placing the contract upon the judicial anvil and hammering it into an unexpected shape.
However, a citation to the Miller decision is notably absent from three other later reported appellate court decisions on point, two of which also originated in the Fourth Circuit. In Pelican Construction Company v. Sewerage and Water Board of New Orleans, 240 So.2d 556 (La.App. 4th Cir. 1970), plaintiff, a subcontractor, appealed from the dismissal of its suit for payments due under a subcontract agreement on an exception of no cause of action. There, the contract provided that defendant, Vullo, another subcontractor, was to pay plaintiff "within five days after receipt of payment from owner." The owner described in the document was the prime contractor, Laguna. The contract also provided that plaintiff agreed to receive payments at such time as payments were received from the owner, the Sewerage and Water Board of New Orleans. Plaintiff did not allege payment by Laguna or the Sewerage and Water Board.
The Fourth Circuit, with Judge Redmann as organ for the court, held that even if the provision was found to be a suspensive condition, plaintiff should be allowed to amend its petition to state a cause of action. Although the court assumed arguendo that the clause in question constituted a suspensive condition as found by the trial court, the court expressed doubt as to the validity of this finding. Judge Redmann elaborated:
Yet, because the contract describes plaintiff's payments as "earned and due *651 him", it seems at the least doubtful that plaintiff's agreement to "receive" them "at such time payments are received from" the Board expresses an intention that they are not due except on a suspensive condition (of payment by the Board).
Pertinent is C.C. art. 2027:
"Whether the parties intended to create a condition or only to modify the obligation without making its existence depend on the event, must be determined, in doubtful cases, by applying the rules hereinbefore established for the interpretation of obligations." (Emphasis added.)
Remembering that art. 2021 defines conditional obligations as those "made to depend on an uncertain event" (either suspensively or resolutorily), it must be observed that "the event" in art. 2027 is exclusively an uncertain event: if it were a certain event, it could never form a condition. Thus art. 2027 envisions the possibility of an obligation being modified by an uncertain event which nevertheless does not affect, neither suspensively nor resolutorily, the existence of the obligation.
[Emphasis in original]
The First Circuit in Chartres Corporation v. Charles Carter and Company, 346 So.2d 796 (La.App. 1st Cir.1977), found that the rationale of the Pelican decision was directly applicable in the construction of a similar clause in a subcontract agreement. In that case, the pertinent clause read:
Contractor may, at its option, retain 10%, or the percentage specified in the Contract Documents, of each estimate until final payment, which shall be made after completion of the work covered by this contract and written acceptance thereof by the Architect, and full payment therefor by Owner ....
The court was unable to construe the provision as manifesting an intent by the parties to allow the defendant to refuse to pay plaintiff as long as any money was supposedly due from the owner. Consequently, the court, relying on former LSA-C.C. Art. 2050,[1] supplied the inference that the parties intended the obligation to be undertaken within a reasonable time, noting that absent an explanation by the prime contractor as to why payment had not been made in the twenty-three month period since completion of the work, a reasonable period of time had elapsed and plaintiff's claim was not premature.
A similar rationale to that espoused by the Fourth Circuit in Pelican was employed in Subdivision Planning Engineers, Inc. v. Manor Development Corporation, 290 So.2d 375 (La.App. 4th Cir. 1974), reversed on other grounds, 349 So.2d 247 (La.1977). Plaintiff, an engineering firm, performed surveying and engineering services for defendant, the owner and developer of a subdivision. The contract provided "[s]aid sum of $60.00 per lot is to be paid in three payments of $20.00 each, as the developer receives its payments." Defendant argued that this language should be interpreted to provide that plaintiff would be paid for those engineering services only if the lots were fully developed. The court held that:
Under the agreement plaintiff was unconditionally obligated to perform engineering and surveying services for the entire subdivision at a stipulated price. The reciprocal obligation of both parties was not a conditional obligation as outlined in LSA-C.C. art. 2021. Rather the quoted provisions merely outline a method of payment of the sums that will become due.
Also pertinent is the decision of Aesco Steel, Inc. v. J.A. Jones Construction, 621 F.Supp. 1576 (E.D.La.1985). In that case, the federal court noted the two divergent lines of cases, and chose to apply the Pelican-Chartres analysis as "indicative of a modern trend."
Although the Pelican rationale is dicta, we are persuaded by its logic and the underlying codal authority supporting its reasoning. According to Professor Levasseur, "a condition is a future and uncertain event *652 which, if it occurs will either create or rescind a bond of law: thus, a conditional obligation is one whose fate is indefinite." A. Levasseur, Precis in Conventional Obligations: A Civil Code Analysis, (1980). Thus, when an obligation is subject to a suspensive condition, the very existence of the obligation depends upon the occurrence of the event. To hold that the parties under these circumstances intended for the subcontractor to be paid the retainage amounts only in the event that the contractor was paid would be untenable.
Moreover, the general rules of contractual construction mandate a contrary result. Interpretation of a contract is the determination of the common intent of the parties. LSA-C.C. Art. 2045.[2] In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text. A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party. LSA-C.C. Art. 2056.[3]
In this case, the contract is a printed form contract with the general contractor's name printed thereon. Consequently, we find this to be evidence that McKee furnished this form and any doubt in its interpretation must be resolved in favor of Cahn Electric. Additionally, courts do not construe stipulations in a contract as suspensive conditions, unless they are compelled to do so by clearly expressed contract language. Schexnayder v. Capital Riverside Acres, 170 La. 714, 129 So. 139 (1930).
Furthermore, each provision in the contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. LSA-C.C. Art. 2050.[4] See also Lambert v. Maryland Casualty Company, 418 So.2d 553 (La.1982); Franks Petroleum, Inc. v. Mayo, 438 So.2d 696 (La.App. 2d Cir.1983), writs denied, 443 So.2d 595 (La.1983).
Reading the provisions of this contract in a manner consistent with Civil Code Article 2050 also buttresses plaintiff's position. The five percent retainage withheld by McKee from the monthly progress payments to Cahn was withheld from "the value of the work provided and performed." Additionally, the contract provides that "final payment shall be due when the work described in this contract is fully completed and performed ...." Therefore, it is clear that the contract, taken as a whole, contemplates an unconditional obligation on the prime contractor to pay for work provided and performed by the subcontractor.
Having decided that the clause at issue does not suspensively condition the obligation to pay the retainage, we progress to decide whether under the terms of the agreement, payment is due, enabling plaintiff to prevail over the exception of prematurity.
LSA-C.C. Art. 1778[5] provides:
Art. 1778. Term for performance
A term for the performance of an obligation is a period of time either certain or uncertain. It is certain when it is fixed. It is uncertain when it is not fixed but is determinable either by the intent of the parties or by the occurrence of a future and certain event. It is also uncertain when it is not determinable, in which case the obligation must be performed within a reasonable time.
*653 As is demonstrated by the history of this dispute, when payment will be made by the owner is an event which is indeterminable. Consequently, the obligation of payment must be performed within a reasonable time. Such a determination must be made according to the circumstances surrounding the formation of the contract and how the parties themselves looked upon the time element. Owens v. Robinson, 329 So.2d 766 (La.App. 2d Cir.1976).
The work was completed by Cahn in May 1984 and accepted by the owner shortly thereafter. While we need not determine the exact point in time which would constitute the time for a reasonable performance of the contractor's obligation under these facts, we have little difficulty in concluding that a reasonable time for performance has elapsed and that this suit, which was instituted April 24, 1985, almost one year from the date of the completion of the work and its acceptance by the owner, was not premature.
Accordingly, the judgment of the trial court sustaining the dilatory exception of prematurity is reversed and the cause is remanded to the trial court for a trial on the merits. The costs of this appeal are assessed against defendant-appellee, Robert McKee, Inc.
REVERSED AND REMANDED.
NOTES
[1] Now reproduced in substance in Civil Code Articles 1777 and 1778.
[2] Although this article is new, it effects no change in the law. According to the official revision comments, it states a principle which underlies former C.C. Arts. 1945, 1949, 1950, and 1956 (1870).
[3] This article is derived from former C.C. Art. 1958 (1870) and effects no change in the law. As stated in the official revision comments, the Louisiana jurisprudence has held that the terms of a printed contract must be interpreted against the party who provided it. Centanni v. A.K. Roy, Inc., 258 So.2d 219 (La.App. 4th Cir. 1972).
[4] This article reproduces the substance of former C.C. Art. 1955 (1870). It does not change the law.
[5] This article reproduces part of the substance of former C.C. Art. 2050 (1870) and does not change the law.