LEMMON, Judge.
This is a suit seeking payment for services rendered under a contract to perform land clearing preparatory to the construction of a golf course. From a judgment awarding plaintiff the amount demanded, Hill Heights Country Club, Inc. has appealed suspensively.
The issues on appeal are factual, principally relating to the exact terms of the contract in dispute.
Hill Heights was incorporated in 1966 for the purpose of providing recreation facilities for its members. Medmill Meadows Company, Inc., owner of a large tract of land in the area, sold a portion of the tract to Hill Heights at a reduced price. Hill Heights then constructed a swimming pool on this land with funds from a bank loan endorsed by its members.
Many of the members of Hill Heights’ Board of Directors desired to investigate the possibility of constructing a golf course. Medmill agreed to donate the additional land necessary for construction and to develop a subdivision with lots located between the fairways, if Hill Heights constructed the golf course and maintained the property thereafter in that use.
Securing a design for a course on the remainder of its land and the land to be donated by Medmill, Hill Heights solicited and received bids for the entire construction, itemized as to stages. The club was not then in a financial position to undertake the entire project, as additional memberships and an additional bank loan would be necessary. Some members believed, however, that preliminary clearing of the land would stimulate the sale of membership subscriptions.
Henry Boudin, one of the members of the plaintiff partnership who was also on Hill Heights’ board and a principal in Medmill (not then incorporated), submitted a bid to clear the areas for the fairways, greens, lakes, club house and baseball diamond for $14,500.00 and to clear a portion of the rough on each side of the fairways for $2,000.00. Hill Heights’ board adopted a motion to accept this bid, since the other bids itemized work on the fairways alone at $16,500.00. The motion also specified that Boudin agreed “to wait for full payment provided the club would agree to pay expenses for laborers, etc. as needed.”
Plaintiff performed extensive clearing work, but when Hill Heights failed to pay the operating expenses, plaintiff discontinued the operation. Hill Heights eventually paid $6,000.00 and plaintiff sued to recover the remainder due, alleging that it had completed 75% of the clearing work on which it had bid $16,500.00.[1]
*539 Hill Heights defended on the basis that payment of the portion of the contract price in excess of out-of-pocket expenses was contingent upon Hill Heights’ securing new members and obtaining a bank loan. Making Medmill a third party defendant, Hill Heights further alleged that Medmill had agreed to have the land cleared and that since Medmill owned 90% of the land, it should bear a proportionate share of the expense.
Hill Heights’ contention that the contract was conditional is not supported by the record. Determination of the exact contract struck in this case is complicated somewhat by the fact that Boudin was a partner in the plaintiff firm while participating in the management of the two defendant entities. Nevertheless, the members of Hill Heights’ board were well aware of this interrelationship, and there is no hint in the record of any fraud or deceit. Furthermore, every witness testified that payment to plaintiff was conditioned solely upon performance of the work which plaintiff contracted to perform.
We therefore conclude that the agreement “to wait for full payment” did not form a condition of the contract, but rather constituted a term or time given for performance. C.C. art. 2048. The term, unlike the conditon, does not suspend the engagement, but only retards its execution. C.C. art. 2051. Accordingly, Hill Heights was obliged to pay plaintiff’s expenses as the work progressed and the balance of the contract price at some reasonable time after completion of performance. Of course, performance was not completed, because Hill Heights failed to pay the expenses in accordance with the agreement.
As to the extent of performance, Boudin testified that he completed clearing of the area for the fairways, greens and lakes, partially completed the area for the baseball field and country club, and did not clear any of the rough. Based on the extent of clearing completed and on the fact that 608 hours were worked of the 800 hours estimated in submitting the entire bid, Boudin testified that 75% of the $16,500.00 bid had been earned. An architect, affiliated with both Hill Heights and Medmill, verified this estimate of the extent of completion. The only testimony in any way contradictory was that a Hill Heights officer who was not on the board at the time of the contract. This officer testified that a certain area was still wooded, but Boudin testified in rebuttal that part of the disputed area was not included in the contract and part comprised some of the 25% not completed.
We conclude that the fact of 75% completion was proved by a preponderance of the evidence.
As to Medmill’s liability, the witnesses unanimously testified that Medmill undertook no obligation to pay for clearing or for any part of the construction of the golf course. While there was some testimony that Medmill was to provide drainage and water, there was no evidence whatsoever that Medmill was to do this prior to completion of construction or that Medmill’s failure in this (or in any other) obligation contributed in any way to. Hill Heights’ abandonment of the project. On the contrary, the record indicates that Medmill kept its offer open for two years after plaintiff’s partial clearing and that the project failed principally because Hill Heights’ members declined to personally endorse the bank note required for construction of the golf course.
Hill Heights’ unjust enrichment argument falls for several reasons. The evidence failed to show that the raw acreage increased in value by selective clearing in *540 spots where the fairways were to be located. Furthermore, Hill Heights undertook the clearing of Medmill’s land as an enterprise risk, having bargained for ownership of the land if successful in completing the project. Medmill did not agree to underwrite the risk and cannot now be held to pay for the risk on equitable grounds.
Finally, Hill Heights’ exception of prescription of three years is without merit, inasmuch as this action, based on a contract, prescribes only after passage of ten years. C.C. art. 3544.
The judgment is affirmed.
Affirmed.

. The minutes of Hill Heights’ board meeting indicate that the board only accepted the $14,500.00 bid for clearing the fairways and ball field. The question as to whether Hill *539 Heights accepted the $14,500.00 bid or the one for $16,500.00 is relatively insignificant, however, since plaintiff does not seek payment for clearing the rough, admitting that clearing the rough was one of the portions of the job remaining uncompleted when work was discontinued.