499 So.2d 417 (1986)
Dorman STRAHAN, d/b/a Strahan Painting Company
v.
LANDIS CONSTRUCTION COMPANY, INC. and United States Fidelity and Guaranty Company.
No. CA-5011.
Court of Appeal of Louisiana, Fourth Circuit.
November 25, 1986.
Writ Granted January 23, 1987.
William E. Wright, Jr., James P. Magee, Baldwin & Haspel, New Orleans, for plaintiffs-appellee.
Gerald J. Gallinghouse, Porteous, Hainkel, Johnson & Sarpy, New Orleans, for defendants-appellants.
William W. Messersmith, III, Terrence L. Brennan, Deutsch, Kerrigan & Stiles, Donald A. Meyer, Shushan, Meyer, Jackson, McPherson & Herzog, William S. Marshall, Jr., Kinney and Marshall, H. Bruce Shreves, Simon, Peragine, Smith, & Redfearn, New Orleans, for amicus.
Before SCHOTT, GARRISON, BARRY, WILLIAMS and ARMSTRONG, JJ.
SCHOTT, Judge.
Defendant, Landis Construction Company, Inc., entered into a building contract with the Louisiana World Exposition (LWE) and subcontracted with plaintiff, Dorman Strahan d/b/a Strahan Painting Company, to perform a portion of the work. Plaintiff performed the work it undertook and brought this suit for the balance of the subcontract price. Defendant, relying on provisions in the subcontract which provided for payments to be made when payments were made to the general contractor by LWE, refused to pay plaintiff because it had not been paid by LWE. The trial court granted summary judgment to plaintiff against defendant and its surety U.S.F. & G. and they have appealed. The principal issue is whether the pay-when-paid provisions are enforceable as written or are susceptible to some other interpretation. Plaintiff has also raised the issue that the surety has an absolute obligation to pay in accordance with the Louisiana Private Works Act (LSA-RS. 9:4801-4842) irrespective of the contractor's liability.
The payment provisions of the subcontract are as follows:
IN CONSIDERATION WHEREOF, The said Contractor agrees that he will pay to the said Sub-Contractor the sum of Five Thousand Nine Hundred Thirty-Six Dollars ($5,936.00) for such materials and work, said amount to be paid as follows: Ninety per cent (90%) of the value of the work completed and accepted each month for which payment has been made by *418 said Owner to said Contractor to be paid on or about the twentieth of the following month, except that final payment will be made by said Contractor to said Sub-Contractor immediately following final completion and acceptance of such materials and work by the Architect, and final payment received by said Contractor, and after satisfactory evidence has been furnished to said Contractor by said Sub-Contractor that all labor and material accounts for use on this particular work have been paid in full.
There is no dispute about the fact that defendant, Landis, has not been paid the balance due it by LWE, and we may assume that this balance will never be paid.
In granting plaintiff's motion for summary judgment the trial court referred to Miller v. Housing Authority of New Orleans, 175 So.2d 326 (La.App. 4th Cir.1965); Pelican Construction Co. v. Sewerage and Water Bd., 240 So.2d 556 (La.App. 4th Cir. 1970); and Chartres Corp. v. Charles Carter & Co., Inc., 346 So.2d 796, (La.App. 1st Cir.1977) and recognized that the Miller case supported defendants' position while the other two cases supported plaintiff's. The court concluded as follows:
Since the contract at issue was drafted by defendant, Landis, and signed by the parties on October 6, 1983, the Court relies on the later expressions of judicial authority. The Court thus finds, as a matter of law, that the "prior payment clause" (before the 1984 enactment of R.S. 9:2784 A and B) was an unconditional promise to pay, when work was performed properly, payment being due within a reasonable time regardless of whether the owner has paid the general contractor.
The trial court's decision to interpret the contract against the party who prepared it was in accord with C.C. art. 1958 (this reference and all others herein are to codal articles as numbered prior to Act 331 of 1984); but under the circumstances prevailing here that article has no application. Art. 1957 provides for interpretation against the party who contracted the obligation "In a doubtful case." and Art. 1958 continues with its rule of interpretation against the party who drafted the contract only if "doubt or obscurity" exists in the first place.
The general rules are that courts are bound to enforce contracts according to the intent of the parties, and such intent is to be determined by the words of the contract when they are clear and lead to no absurd consequences. Art. 1945. Furthermore, the words of a contract are to be understood in the common and usual signification according to general and popular use. Art. 1946.
We fail to discern any doubt, ambiguity, uncertainty or obscurity about the words under consideration here. Plaintiff agreed to be paid its progress payments on the basis of "90% of the value of the work completed and accepted each month for which payments have been made by said Owner." Plaintiff had to understand that unless the owner paid defendant no payments would be due plaintiff by defendant. Nothing can be clearer than the words regarding final payment which was to be made when three things occurred including "final payment received by said Contractor." There is no need to invoke the provisions of Arts. 1957 and 1958 because no doubt exists here. Plaintiff must abide by the clear provisions of the subcontract he signed.
The trial court went on to apply the Pelican and Chartres cases since these were the later expressions of judicial authority. This, too, constitutes error. As to the Chartres case, we have no hesitation about declining to follow it since it conflicts with the Miller case decided by this court. Furthermore, no rehearing was applied for in Chartres, and, thus, no application for writs was filed in the Supreme Court. However, we note that the Chartres case explicitly followed the Pelican case which was decided by this court after the Miller case so that the Pelican case and it alone must be dealt with here as "judicial authority" supporting plaintiff's petition in this case.
*419 At the outset, we note that much of Pelican's discussion relied upon by our plaintiff was obiter dicta provided by the court after the decision had already been made to remand the case. The court was faced with an exception of no cause of action which had been sustained by the trial court because the petition contained no allegation of payment by the owner to the general contractor while the contract between the general contractor and the plaintiff-subcontractor mandated payments only within five days after payment by the owner to the general contractor. The dispositive portion of the opinion was as follows:
Accordingly, even if we accept the priorpayment clauses as a suspensive condition, it appears to us that plaintiff should have been allowed to amend its petition, C.C.P. art. 934, so as to allege any circumstances which would show that Vullo-Coast-line prevented the condition's fulfillment, or would otherwise entitle plaintiff to recover notwithstanding the absence of literal fulfillment. Perhaps we should point out that nonperformance by Laguna would equally be a prevention of fulfillment of any similar provision in its contract with Vullo-Coastline (although there would remain the question whether Vullo-Coastline's consequent entitlement to immediate payment is the equivalent of receipt of payment, or may be if Vullo-Coastline "prevents" receipt by not actively demanding it, perhaps even through litigation).
The court had concluded that plaintiff was entitled to a reversal of the trial court's judgment even assuming defendant's argument based on the prior payment clauses was a good and valid one. Even though the case was over at this point the court engaged in a discussion which was in conflict with the Miller case without ever citing the case. In any event, the Pelican court found that the language of the contract there, to wit, that plaintiff "agrees to receive payments earned and due him at such time payments are received by the Sewerage and Water Board of New Orleans" was inconsistent with the notion that payment by the Board was a suspensive condition to take place before the payments would become due. This inconsistency enabled the court to apply Arts. 1957 and 1958 with their rules for interpretation against the obligors and drafters when there is doubt about a contract's meaning. In the instant case we have no language like the "earned and due" language of Pelican.
Art. 2027 provides as follows:
Whether the parties intended to create a condition or only to modify the obligation without making its existence depend on the event, must be determined, in doubtful cases, by applying the rules hereinbefore established for the interpretation of obligations. (emphasis added).
Since the court had reasoned that this was a "doubtful" case because of the "earned and due" language it could find that the parties intended to "modify the obligation" by fixing a reasonable time frame for payment pursuant to art. 2050 rather than to create the condition that payment would not be due the subcontractor unless the general contractor was paid. Because the contract here under consideration is clear, this case is not doubtful, and no justification exists for the court to disregard the intent of the parties to create a condition, namely, payment by the owner prior to payment to the subcontractor.
We have thus far concluded that Miller and not Pelican is the law of this circuit and must be followed in this case. However, plaintiff contends that Miller is not controlling because there the final payments were recognized to be due to contractor as a result of the decision in Pittman Construction Company v. Housing Authority of New Orleans, 169 So.2d 122 (La.App. 4th Cir.1964), writs refused 247 La. 343, 344, 346, 347, 348, 170 So.2d 865, 866; and the money was available for payment; whereas, in the instant case, LWE is insolvent so that the contractor will never be paid. We are unable to reconcile this argument with the following language from the Miller case which envisioned the very situation which came about here:

*420 This provision was obviously intended to prevent the prime contractor from being compelled to assume the obligation of financing the construction of the Project in the event of default by the owner. Therefore, we must give effect to the clear intention of the parties as agreed to, and we, as usual refrain from placing the contract upon the judicial anvil and hammering it into an unexpected shape.
We conclude that this case is controlled by Miller v. Housing Authority of New Orleans, supra, and the trial court erred in failing to follow it.
Plaintiff contends that he is entitled to a judgment against U.S.F. & G., the surety, even if he cannot recover from Landis. He relies on provisions of the Louisiana Private Works Act, R.S. 9:4801-4842 to support his position. U.S.F. & G. contends that its obligation is accessory to that of Landis and refers to the terms of the bond. The record does not contain a copy of the bond. From the reasons given by the trial court it seems clear that this issue of U.S.F. & G.'s separate or independent liability was never considered below. We are convinced that it played no part in the trial court's summary judgment, and we decline to consider the issue on appeal under these circumstances. Plaintiff is not precluded from raising the issue in the trial court in the future.
Accordingly, the judgment of the trial court is reversed and set aside, plaintiff's motion for summary judgment is denied, and the case is remanded to the trial court for further proceedings. The costs of this appeal are assessed against plaintiff. Other costs are to await the outcome of the case.
REVERSED AND REMANDED.
BARRY, J., dissents.
BARRY, Judge, dissents.
I disagree with the majority's reasoning which effectively voids a valid contract by misinterpreting its "pay after payment" provision.

SUMMARY JUDGMENT
The party filing for summary judgment has the burden of showing the absence of a genuine issue as to any material fact. Klohn v. Louisiana Power & Light, 406 So.2d 577 (La.1981); Rachal v. Audubon Park Commission, 467 So.2d 1281 (La. App. 4th Cir.1985), writ denied 469 So.2d 988 (La.1985). Summary judgment is available only when the pleadings, depositions and affidavits, if any, show there is no genuine issue as to a material fact and the mover is entitled to judgment as a matter of law. La.C.C. Art. 966; Thompson v. South Central Bell Telephone Company, 411 So.2d 26 (La.1982); Ermert v. Hartford Insurance Company, 480 So.2d 999 (La.App. 4th Cir.1985), writs denied 484 So.2d 672-74 (La.1986). A summary judgment is not to be used as a substitute for a trial on the merits and all reasonable doubts are resolved against the granting of summary judgment. Oller v. Sharp Electric, Inc., 451 So.2d 1235 (La.App. 4th Cir. 1984), writ denied 457 So.2d 1194 (La.1984).
Landis admitted owing $22,551.82 in its Affidavit in Opposition to the Summary Judgment and the trial court granted a partial summary judgment based on Hancock Bank v. Alexander, 227 So.2d 183 (La.App. 3rd Cir.1969). In that case the Third Circuit affirmed but amended a summary judgment to reduce a $2,084.10 award to $2,002.00 which was conceded. The Supreme court affirmed. 256 La. 643, 237 So.2d 669 (1970).
Although Landis argues that Strahan did not furnish satisfactory evidence that all labor and materials had been paid in full as required, Landis previously paid over $150,000.00 to Strahan. The affidavits, pleadings and other documents do not present any genuine issue as to the conceded $22,551.82 and there only remains a question of law.

PAY AFTER PAYMENT
Landis and USF & G claim insulation from debt until LWE pays and rely on Miller v. Housing Authority of New Orleans, *421 175 So.2d 326 (La.App. 4th Cir.1965), reversed in part 249 La. 623, 190 So.2d 75 (1966). Strahan relies upon Pelican Construction Company v. Sewerage and Water Board of New Orleans, 240 So.2d 556 (La.App. 4th Cir.1970), and Chartres Corporation v. Charles Carter & Company, 346 So.2d 796 (La.App. 1st Cir.1977), neither of which mention Miller.
The trial court followed Pelican and Chartres and concluded:
Since the contract at issue was drafted by defendant, Landis, and signed by the parties on October 6, 1983, the court relies on the later expressions of judicial authority. The court thus finds, as a matter of law, that the "prior payment clause" (before the 1984 enactment of R.S. 9:2784 A and B) was an unconditional promise to pay, when work was performed properly, payment being done within a reasonable time regardless of whether the owner has paid the general contractor.
Miller has been ignored for 20 years in cases dealing with prior payment clauses until a recent state Fifth Circuit opinion. The reason for Miller's isolation becomes clear when its contract and attendant circumstances are examined. Pittman, the general contractor for the Desire Street Housing Project, drafted agreements with several subcontractors including Miller. Article XI of the Miller subcontract (and all the other subcontracts) provided:
The said Contractor hereby agrees to pay to the said Subcontractor for such labor and material herein undertaken to be done and furnished, the sum of TWO HUNDRED SIXTY THOUSAND DOLLARS ($260,000.00), subject to additions and deductions as herein provided, and such sum shall be paid by the Contractor to the Subcontractor as the work progresses in monthly installments on follows.... On the 10 day of each month, the Subcontractor shall present to the Contractor a statement of the work done during the preceding month, which statement when checked and approved by the Contractor, will be paid within 10 days after receipt of payment from the Owner, providing all progress of the work and payments for labor and material used are satisfactory in general to the Contractor, less 10 per cent of each estimate to be retained until final payment which shall be made within 10 days after completion of the work included in this contract and written acceptance by the Architect and full payment therefor by the Owner ...
190 So.2d at 77, n. 3 and the district court record, No. 340-360, Division F. Pittman's work was not accepted, HANO refused to pay the 10% retainage, and Pittman refused to pay Miller.
The Miller court found the payment provision was a suspensive condition as to the contractor's obligation to its subcontractor. See also Pittman Construction Company v. Housing Authority of New Orleans, 169 So.2d 122 (La.App. 4th Cir.1984), writs refused 247 La. 343-44, 346-48, 170 So.2d 865-66 (1965). The Miller court said:
This provision was obviously intended to prevent the prime contractor from being compelled to assume the obligation of financing the construction of the Project in the event of default by the owner. Therefore, we must give effect to the clear intention of the parties as agreed to, and we, as usual, refrain from placing the contract upon the judicial anvil and hammering it into an unexpected shape. Consequently, the judgment of the lower court must be amended to make any payment due thereunder by Pittman to Miller conditioned upon receipt by Pittman from the Housing Authority of payment for work performed by Miller. In view of the foregoing conclusion, interest shall only begin to run in favor of Miller ten days after the Housing Authority has made final payment to Pittman.
175 So.2d at 331.
In Miller the date when interest began to run was the primary question. Although payment by HANO had been temporarily withheld, there was no uncertainty as to the final payment. Pittman paid Miller before this court's opinion, 190 So.2d at *422 79, n. 1. The only remaining issue (interest from judicial demand or ten days after final payment) was brought to the Supreme Court.
Although this court found the Miller Article XI obligation a suspensive condition and not ambiguous, the Supreme Court looked beyond the document in order to declare that the questioned provision related to Pittman's intent to protect itself since it could not obtain interest from HANO (if final payment was temporarily withheld) under Art. III, § 35 of the 1920 Louisiana Constitution. During litigation the constitution was amended by La. Acts 1960, No. 621 to allow for collection of interest.
The court's Miller opinion specified that "interest would run from ten days after the Housing Authority has made final payment to Pittman." 175 So.2d at 337. That decree along with the quoted language clearly shows that HANO was expected to eventually make payment and its insolvency was not at issue. The Supreme Court reversed on the interest question and made it payable from judicial demand, long before final payment by HANO.
Bankruptcy was of no concern in Miller, whereas LWE's bankruptcy is the root problem here.
Our court did not mention Miller when it considered a prior payment provision five years later in Pelican. An exception of no right or cause of action had been maintained. At issue was an agreement which stated that the contractor would pay "within five days after receipt of payment from Owner, [S & W Board]" and the subcontractor "agrees to receive payments earned and due him at such time payments are received from Sewerage and Water Board of New Orleans...." Payments by the owner or contractor were not alleged. Finding the "earned and due him" language somewhat in conflict with the alleged agreement that payment was due only after payment by the owner, this court applied the rules on obligations in doubtful cases.
This court assumed the quoted clauses constituted a suspensive condition and concluded the plaintiff should have been allowed to amend its petition. In dicta the court expressed considerable doubt that the clauses constituted a suspensive condition:
[W]e consider it unlikely that the parties intended to make Vullo-Coastline's obligation to pay plaintiff depend on a suspensive condition; we think it more likely that the obligation was merely intended to be modified so as to make the implied reasonable-time term, C.C. art. 2050, relate to the time when `in the usual course of events' (compare C.C. art. 1776) payment of Laguna [contractor], or the Board [owner] would ordinarily occur or at least be exigible.
240 So.2d at 559.
Although dicta, the reasoning is very persuasive and has been followed in subsequent cases. The use of the words "term" and "suspensive condition" in the above paragraph were being utilized in the strictest sense of the word. A condition is a restrictive clause which modifies the efficacy of a juridical act. Every condition consists in the designation of a future specified event upon the realization of which the effects of the act depend. See La.C.C. Arts. 2021; 2043 (1870) [art. 1767].[1]
A suspensive condition, which postpones the effect of the act until a certain specified event happens, can be of two kindsthe term and the condition. Term and condition differ from the point of view of the certainty of realization. "The future event called `term' is certain, in the sense that its happening is inevitable; `condition,' on the other hand, is an uncertain event which may not come to pass." 1 Pt. 1 PLANIOL & RIPERT, TRAITE ELEMENTAIRE DE DROIT CIVIL, No. 310 (La.State Law Institute Trans. 1959) [1 Pt. 1 PLANIOL]. See also Levasseur, Precis in Conventional Obligations A Civil Code Analysis 7-16 (1980). [Levasseur]. A term may not only consist of a determinate lapse of time, but also of an event, provided that event is *423 certain. If it is uncertain, it forms a condition. La.C.C. Art. 2049 (1870) [Art. 1797].
Planiol warns that "condition" is often applied when it should not be. 1 Pt. 1 PLANIOL at No. 310, n. 1. See also 4 C. AUBRY & C. RAU, COURS DE DROIT CIVIL FRANCAIS, § 302 (La.State Law Institute Trans. Vol. 1, 1965). In its special and accurate meaning a condition is a declaration of intention whereby the existence of a legal relation is made to depend on a future and uncertain event. Uncertainty is a prerequisite. Id.
A term is uncertain if its expiration depends on an event, which although it must necessarily happen, may be realized in a time more or less prolonged. It does not suspend the existence of the obligation (as does a condition), but merely retards its performance. 1 Pt. 1 PLANIOL at Nos. 318-19. The obligation suspended by the term is considered as already in existence, although its execution is deferred. Although the claim (as of a creditor) is not exigible, it exists and produces effects such as the running of interest. The right dependent on the happening of a suspensive condition (in its strictest sense) has as yet no existence. It is not known whether the right will ever exist. As long as the condition is pending, the contract does not yet exist. Id. at Nos. 318-19, 1268; Levasseur at 9-10.
In concluding that the prior payment clause in Miller's subcontract was a suspensive condition, this court may well have been using the broadest meaning that the effect of the contract was postponed until a certain future specified event occurred. The court was not faced with the actual payment issue and did not dwell on the fine difference of whether the language constituted a "condition" or a "term", subcategories of suspensive condition according to Planiol.
The obligation of Miller to do the lathing and plastering and of Pittman to pay for the work was in existence although its execution was deferred by a term. See La. C.C. Art. 2050 (1870) [Art. 1778)]. The event to occur, final payment by HANO, was not uncertain. Although this court did not allow interest until the date the event happened (perhaps considering the provision a condition), the Supreme Court reversed that part of the decree and awarded interest from the date of judicial demand. This would support the logical conclusion that the provision constituted a term.
To conclude that an obligation between Miller and Pittman did not exist until payment by HANO and neither side would have a legal right to enforce the agreement prior to the owner's final payment would be ludicrous. Such clauses cannot logically be considered suspensive conditions.
In Subdivision Planning Engineers, Inc., v. Manor Development Corporation, 290 So.2d 375 (La.App. 4th Cir.1974) [after remand omitted], this court considered an engineering and survey contract letter which provided that "[s]aid sum of $60.00 per lot is to be paid in three payments of $20.00 each, as the developer receives its payments." It also noted that $2,590.14 had been paid and provided: "The remainder of the funds due you will, of course, only be paid to you as we receive funds under our owner-builder commitments." This court concluded:
Under the agreement plaintiff was unconditionally obligated to perform engineering and surveying services for the entire subdivision at a stipulated price. The reciprocal obligation of both parties was not a conditional obligation as outlined in LSA-C.C. art. 2021. Rather the quoted provisions merely outline a method of payment of the sums that will become due.
290 So.2d at 379. The court did not conclude that the language created a conditional obligation which depended on an uncertain event. Two parties in business obligate themselves from the moment of contracting. The contract exists; only the term relating to when payment is due and the claim exigible is set out by this language.
In River Ridge Company v. Hill Heights Country Club, Inc., 300 So.2d 537 (La.App. 4th Cir.1974), this court considered a land *424 clearing contract which included a Motion adopted by a Country Club which specified that the other party agreed "to wait for full payment provided the club would agree to pay expenses for labors, etc. as needed." We rejected the Country Club's contention that the contract was conditional:
We therefore conclude that the agreement `to wait for full payment' did not form a condition of the contract, but rather constituted a term or time given for performance. C.C. art. 2048. The term, unlike the condition, does not suspend the engagement, but only retards its execution. C.C. art. 2051. Accordingly, Hill Heights was obliged to pay plaintiff's expenses as the work progressed and the balance of the contract price at some reasonable time after completion of performance.
300 So.2d at 539.
In Chartres the First Circuit was faced with a subcontract containing language similar to that in Miller and a lower court ruling that maintained an exception of prematurity filed by the general contractor in the subcontractor's collection suit. Finding Pelican applicable, the court held the language was not a suspensive condition, rather it set a term requiring payment within a reasonable period of time and in the usual course of events. The court was "unable to conclude that the parties intended that the defendant could always refuse to pay the plaintiff as long as any money was supposedly outstanding from the owner." 346 So.2d at 797-98. Citing C.C. Art. 2050 (1870) [art. 1777, 1778] relating to an obligation when no term is stipulated, the First Circuit inferred the intent to be that the obligation be undertaken within a reasonable time.
The Third Circuit rejected the argument that "to guarantee the payment of $35,000.00... not later than 45 days after payment of retainage is required of the State of Louisiana...." constituted a suspensive condition. Calcasieu-Marine National Bank of Lake Charles v. Darling, 399 So.2d 1245 (La.App. 3rd Cir.1981). The court refuted the contention that the three individuals binding themselves by the above language did not owe anything unless and until a retainage was actually required to be paid by the State. The court held that the provision was not a suspensive condition (in the strict sense of the word) and concluded it was merely a time limitation.
This jurisprudence was considered by a U.S. District Court in Aesco Steel, Inc. v. J.A. Jones Construction Company, 621 F.Supp. 1576 (E.D.La.1985), which involved a motion for summary judgment filed by a subcontractor who finished its work on the World's Fair but had not been fully paid. After an analysis of our case law, the federal court declared there were two lines of cases, decided that Louisiana courts would follow the Pelican-Chartres rationale (not Miller), and granted summary judgment.
The Second Circuit also declined to follow Miller in Cahn Electric Company, Inc. v. Robert E. McKee, Inc., 490 So.2d 647 (La.App. 2d Cir.1986), which involved a lower court judgment maintaining an exception of prematurity by a subcontractor whose agreement provided in part: "Final payment shall be due within ten (10) days after the Contractor receives final payment from the Owner." The court found the Pelican rationale (in dicta) persuasive along with the codal authority supporting the reasoning. The opinion correctly noted that "when an obligation is subject to a suspensive condition, the very existence of the obligation depends upon the occurrence of the event. To hold that the parties under these circumstances intended for the subcontractor to be paid the retainage amounts only in the event that the contractor was paid would be untenable." 490 So.2d at 652. The court concluded the clause did not suspensively condition the obligation to pay.
The court pointed out that La.C.C. Art. 2021 (1870) [Art. 1767] envisions the possibility of an obligation being modified by an uncertain event which does not affect, suspensively or resolutorily, the existence of the obligation. Considering the contract as a whole, the court held that the contract *425 contemplated an unconditional obligation on the prime contractor to pay.
The Cahn Electric court cited La.C.C. Art. 2050 (1870) [Art. 1778] which states that an uncertain term, not fixed by the parties, can be determined by the parties' intent or by the occurrence of a future and certain event. Deciding that when payment would be made by the owner was an indeterminable event, the court concluded payment had to be made within a reasonable time. The exception of prematurity was reversed.
Recently in Southern States Masonry, Inc. v. Jones Construction Company, 498 So.2d 151 (La.App. 5th Cir.1986), the court relied on Miller in construing a subcontract which provided in pertinent part:
3. Contractor shall pay to Subcontractor, upon receipt of payment from the Owner, an amount equal to the value of Subcontractor's completed work, to the extent allowed and paid by Owner on account of Subcontractor's work.
4. Final payment. A final payment, consisting of the unpaid balance of the Price, shall be made within forty-five (45) days after the last of the following to occur: (a) full completion of the Work of Subcontractor, (b) final acceptance of the work by the Architect and Owner[,] (c) final payment by Owner to Contractor under the Contract.
The Fifth Circuit concluded:
"[W]e find the terms of this contract are quite clear and unambiguous, and its simple effect is to make payment by the owner to the contractor a suspensive condition to the contractor's obligation to make payment to its subcontractor." At 153.
That opinion is distinguishable from this case because the subcontract at issue there did not have conflicting provisions. The Southern States Masonry subcontract does not contain the unconditional language binding Landis to pay Strahan in the subcontract before this Court: "The said Contractor agrees that he will pay to the said Sub-Contractor the sum...." The Strahan contract then goes on to provide that the "said amount [is] to be paid as follows: ninety per cent (90%) of the value of the work completed and accepted each month for which payment has been made by said Owner to said Contractor ... except that final payment will be made by said Contractor to said Sub-Contractor immediately following ... final payment received by said Contractor...."
I find the language which unconditionally binds Landis to pay, coupled with the provision arguably setting up a condition or term for payment, clearly ambiguous. It is at least doubtful that Strahan's agreement to be paid "immediately following ... final payment received by the Contractor" expresses an intent that the entire obligation depends on a suspensive condition (the payment by LWE). See Pelican, 240 So.2d at 558.
Under La.C.C. Art. 2027 (1870) [no counterpart] I feel that "[w]hether the parties intended to create a condition or only to modify the obligation without making its existence dependant upon the event, must be determined ... by applying the rules... for the interpretation of obligations." According to new Art. 2053 a doubtful provision (if this one is) should be interpreted in light of the nature of the contract, equity, usages and conduct of the parties before and after formation of the contract.
A court's function in interpreting a contract is to determine the common intent of the parties. La.C.C. Art. 1945, 1949, 1950, 1956 (1870) [Art. 2045]. Any ambiguity must be interpreted against the party who drafted the contract. La.C.C. Art. 1958 (1870) [Art. 2056]; Rayford v. Louisiana Savings Association, 380 So.2d 1232 (La. App. 3rd Cir.1980), writ refused 384 So.2d 793 (La.1980). Generally, provisions are construed so as not to be suspensive conditions whenever possible. Schexnayder v. Capital Riverside Acres, 170 La. 714, 129 So. 139 (1930). Any doubt as to whether the provision constituted a suspensive condition should be resolved against Landis who drafted the contract.
In my interpretation of the entire subcontract, I am persuaded by the reasoning in *426 Pelican, Subdivision Planning Engineers, and River Ridge Company in our own Circuit, Cahn Electric Company from the Second Circuit, Chartres Corporation from the First Circuit, and Calcasieu-Marine National Bank of Lake Charles from the Third Circuit. I conclude the subject provision does not constitute a suspensive condition which would negate any obligation until the completion of an uncertain event. Rather, I find the provision creates a term which merely retards the execution of the obligation. See generally Litvinoff, 7 Louisiana Civil Law Treatise: Obligations, Book 2 § 64 (1975).
The prior payment provision sets out a term for payment within a reasonable period of time, Blair v. Diaz, 342 So.2d 1237 (La.App. 4th Cir.1977), writ denied, 345 So.2d 59 (La.1977), to be determined by the circumstances. Perrin v. Hellback, 296 So.2d 342 (La.App. 4th Cir.1974), writ refused 300 So.2d 184 (La.1974). See generally Thomas J. Dyer Company v. Bishop International Engineering Company, 303 F.2d 655 (6th Cir.1962); Peacock Construction Company, Inc. v. Modern Air Conditioning, Inc., 353 So.2d 840 (Fla.1977).
Although Landis does not argue that a reasonable time has not lapsed (substantial completion acceptance was recorded June 20, 1984), that argument is advanced in the amicus briefs. It is clear that when the summary judgment was granted (September 1985) a reasonable time had passed.
I reject the arguments by both sides as to the applicability of La.R.S. 9:2784 B: "If for any reason the contractor receives less than the full payment from the owner, then the contractor shall be obligated to disburse only the funds received on a prorated basis with the contractor, subcontractors, and suppliers each receiving a prorated portion based on the amount due on the payment."
That statute was enacted by Acts 1984 No. 720, Section 1, and is not retroactive to this 1983 contract. Block v. Reliance Insurance Company, 433 So.2d 1040 (La. 1983). I find no curative purpose expressed in Act 720 which would allow retroactive application.
The partial summary judgment should be affirmed.
NOTES
[1] The first article cited will refer to the pre-1984 obligations articles followed by the new article.