GOTHARD, Judge.
Defendant, United States Fidelity and Guaranty Company (USF & G) appeals an adverse decision on a motion for summary judgment. We affirm.
This matter arises out of a suit for breach of contract ^filed on September 13, 1986 by Metropolitan Erection Company, Inc. (Metro), a subcontractor, against Lan-dis Construction Company, Inc. (Landis), a general contractor, and its surety, (USF & G). The contract at issue is one for construction of a gondola for the Mississippi Aerial River Transit Facility (Mart) on the site of the 1984 Louisiana World’s Fair in New Orleans.
In the petition Metro asserts a claim for $87,785.50 plus interest and cost due and owing for labor performed and materials furnished as per the terms of its subcontract with Landis. Landis answered the suit admitting the funds were due to Metro but maintaining as a defense a “pay when paid” clause in the subcontract. Landis asserts that, since it has not been paid by the owner (Mart) on the prime contract, Metro is not yet entitled to payment on the subcontract. Landis also made a third party demand against Mart for payment on the prime contract.
A trial on the merits was continued indefinitely by a joint motion of the parties on March 30, 1987 pending the outcome of two consolidated cases before the Louisiana Supreme Court interpreting the “pay when paid” clause in subcontracts.[1] In that motion the following statement was made;
... undersigned counsel thinks that the decisions of our La. Supreme Court in these cases will probably be binding precedents that will be dispositive of the issues involved in this action that should obviate trial of this case and result in an agreement for a consent judgment herein
[[Image here]]
On May 18, 1987 a decision rendered by the Supreme Court in those consolidated *1149 cases[2] held that “pay when paid” clauses provide a method of and not a condition precedent to payment; thus, subcontractors were given a right to collect monies owed pursuant to a subcontract even if the general contractor has not been paid on the prime contract.
The parties filed stipulations which resolved all factual issues as follows:
1. On September 28, 1983, Landis, as general contractor, entered into a written prime contract with third party defendant MART/Perez, Inc., as owner, for construction of the Mississippi Aerial River Transit [“Mart”] on the site of the 1984 Louisiana World’s Fair in New Orleans, Louisiana.
2. The notice of this construction contract was recorded at MOB 2430, folio 347 in the office of the Orleans Parish Recorder of Mortgages, in compliance with the Louisiana Private Works Statute (La.R.S. 9:4801-4842, as amended).
3. Defendant, USF & G, issued a written bond as Surety for Landis, as general contractor, on the September 29, 1983 MART/Perez, Inc. — Landis Prime Contract in compliance with Louisiana Private Works Statute (La.R.S. 9:4801-4842). Due to the bankruptcy proceedings of Landis, referred to below, USF & G remains the only defendant as to Metro.
Landis is now the debtor in a petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code pending in the United States Bankruptcy Court for the Eastern District of Louisiana and bearing case number 87-05424-BCK-THK.
4. On January 23, 1984, Landis entered into a written Subcontract Agreement with Metro for the completion of the erection of all fabricated steel and pre-cast x-bracing required for the Mississippi Aerial River Transit facility on the site of the 1984 Louisiana World Exposition in New Orleans, Louisiana. The base contract price was $79,062.00. Lan-dis issued to Metro three change orders totaling $94,075.00 thereby increasing the adjusted contract price to $173,-137.00.
5. Metro satisfactorily performed and completed all of the work of the Subcontract as amended.
6. Landis satisfactorily performed and completed all work required by the Prime Contract with MART, and in May, 1984, MART assumed occupancy, possession, control and use of the structures and improvements, and used these facilities continuously during the six month period of the World’s Fair, from May 12, 1984, to November 11, 1984.
7. Landis, in its third party demand herein, alleges that MART has failed to pay it $868,099.00 of the earned Prime Contract funds.
8. Landis and USF & G admit that the unpaid balance on Metro’s subcontract is $87,785.50 for which Metro filed this lawsuit on September 13, 1985.
9. Landis and MART/Perez filed a Certificate of Substantial Completion on June 20, 1984, and said notice is recorded as instrument number 555091 of the Notarial Archives of the Parish of Orleans and recorded in MOB 2452, folio 517.
The notice of this acceptance was published in the New Orleans Daily Journal of Commerce on July 11, 1984. However, this publication is available to individuals, corporations, etc. by subscription only.
10. Landis admits that it never advised Metro of the filing of this Notice of Substantial Completion and that it repeatedly acknowledged its debt to Metro, and adyised that it was owed $868,099.00 by MART, and advised that it would pay Metro upon receipt of the money owed it by MART, relying on the “Pay When Paid” provisions of Landis’ January 23, 1984 contract with Metro.
Landis, in its third party demand against MART/Perez, alleges a violation and breach of essential terms and conditions of the September 29, 1983 Prime Contract, and admits that such a breach existed when it signed a Certificate of *1150 Substantial Completion filed on June 20, 1984 (recorded as noted above).
11. The parties agree that this case was set for trial on the merits in this Court on March 23, 1987, and the record will reflect that the parties, through their then respective counsel, filed a Joint Motion to continue the Trial. In this Joint Motion to Continue, the parties agreed, through their respective counsel, to the issues to be litigated before this Court.
The reason for the continuance was that similar issues were pending before the Louisiana Supreme Court in two consolidated cases titled “Southern States Masonry, Inc. v. J.A. Jones Company and Fidelity and Deposit Company of Maryland” #86-0-2443 (498 So.2d 151 La.App. 5th Cir.), and “Dorman Stra-han d/b/a Strahan Painting Company v. Landis Construction Company and United States Fidelity & Guaranty Company ” # 86-0-2544 (499 So.2d 417 La.App. 4th Cir.).
12. The parties agree that the above cited cases were heard by the Supreme Court, and that a decision rendered May 18, 1987 and reported at (507 So.2d 198 Sup.Ct.1987) held that the “Pay When Paid” clauses were a method of payment and not a condition precedent, and therefore, that the subcontractors had a right to be paid even if the owner had not paid the general contractor. A motion for a re-hearing in these consolidated cases was denied on June 18, 1987.
13. On June 5th, following the rendering of the above Supreme Court decision, demand was made on Landis by letter (certified mail delivery), and USF & G’s then counsel, by undersigned counsel for Metro, for payment, as per the agreement contained in the aforementioned Joint Motion to Continue.
Defendants did not respond to repeated requests for payment, and on or about September 25th undersigned counsel for Metro filed a Motion to Set this matter for Trial on the Merits. A PreTrial Conference was held on Wednesday, December 2nd, and this matter was again set for trial on the merits for March 30, 1988.
By letter dated December 9th, counsel for defendant, USF & G, advised counsel for Metro that it would not pay Metro’s claim raising the defense of prescription, alleging plaintiffs failure to file suit against the Surety within one year and thirty days following the recordation of the Notice of Substantial Completion.
The parties also agreed that the legal issues before the trial court were limited to the following:
(1) Must the general contractor, i.e. Landis, notify its subcontractors, i.e. Metro, of the filing of the Certificate of Substantial Completion, which notice affects the lien and privilege rights of the subcontractor, as provided by Louisiana Private Works Statute (La.R.S. 9:4801-4842, as amended) in order for the prescriptive period as provided therein to commence running against the subcontractor.
(2) Was the signing of the Certificate of Substantial Completion by Landis, while a breach existed in its contract with MART/Perez, Inc., an improper filing resulting in depriving the subcontractor (Metro) of enforcement of its lien and privilege rights.
(3) Does the Motion to Continue filed on or about March 21st constitute a waiver by defendants, Landis/USF & G, of their claim for prescription, and further, does it compel them to enter into a consent judgment as recited therein.
USF & G filed a motion for summary judgment. The parties put on no evidence. The matter was submitted on the stipulations and memoranda. The trial court rendered a judgment denying the motion on March 5, 1992. In written reasons for judgment the trial court stated:
The plaintiff asks the Court to apply the law in such a way as to be fair to both sides. MECO contends that if La. R.S. 9:4822(A) is interpreted as defendant argues, then the privilege granted to claimant is governed by a time frame controlled by the owner or general contractor, or both. When the owner and contractor filed the Certificate of Sub *1151 stantial Completion, it triggered the running of the time period in which a lien could be filed. No notice of the filing of the certificate is required by the statute which, MECO argues, results in the subcontractor claimant being put in the onerous position of not knowing when the time period for filing a claim begins to run.
Another aspect of this system, which the Court finds most onerous, is the situation at bar where the parties had a “pay-when-paid clause” in their contract. Landis raised in its answer to this suit that since it had not been paid by the owner, MECO had no right to be paid until it was paid. This placed MECO in a position where it could not file a lien .without it being deemed premature. Landis could, and did, file a Certificate of Substantial Completion which started the running of the time in which a subcontractor, such as plaintiff, could make a claim. Yet, the plaintiff was prevented, under the terms of the Pay-when-paid clause of the contract, from making a claim. As a result, the time period under which the plaintiff could theoretically protect its rights passes without the plaintiff being able to act. The court finds this to be an inequitable situation. Throughout this time period, Landis repeatedly acknowledged the debt to MECO. While the time for filing a claim was slipping away, under defendant’s argument, the plaintiff was being assured that it would be paid.
The Court finds that under the specific fact situation presented herein, the plaintiffs claim against USF & G has not prescribed. Accordingly, the Court will deny USF & G’s Motion for Summary Judgment.
Subsequently, on May 13, 1992 the trial court rendered a judgment on the merits in favor óf plaintiff, Metro and against defendant, USF & G in the amount of $87,785.50 plus interest and court costs. It is from that judgment that USF & G appeals and argues that the trial court erred in holding that plaintiff’s claim had not prescribed.
Under the provisions of the Louisiana Private Works Act a claimant must file suit within one year of the last date that the claimant could have recorded a statement of lien or privilege against the project in order for the claimant to be able to maintain any rights which the claimant may have against the surety. LSA-R.S. 9:4813 E. A subcontractor has thirty days after the filing of a certificate of substantial completion to file a claim. LSA-R.S. 9:4822 A(l).
According to the stipulations of the parties a certificate of substantial completion was filed in the public records on June 20, 1984, plaintiff had until July 20, 1985 to timely file suit. Plaintiff in this matter did not file suit until September 13, 1985. On its face the petition appears to be untimely. However; our inquiry cannot stop here.
First, we note that prescription was never formally pleaded as required by LSA-C.C.P. art. 927. Defendant argues prescription in memorandum to the court but failed to file an exception of prescription. However, in view of the fact that the issue of prescription was presented to the trial court in joint stipulations, we find the issue properly before the court.
We are not persuaded by plaintiff’s argument that notice to the subcontractor of the filing of the certificate of substantial completion is needed. The Private Works Act makes no such requirement. Further, we are satisfied that the filing of a certificate in the public records gives sufficient constructive notice to subcontractors to satisfy the demands of equity. Nonetheless, we affirm the trial court’s ruling that this claim has not prescribed.
Prescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe. LSA-C.C. art. 3464. The acknowledgment need not be in any particular form. Flowers v. USF & G, 381 So.2d 378, 381 (La.1980). Here, defendant admits in stipulations that “it repeatedly acknowledged its debt to Metro, and advised that it was owed $868,099.00 by Mart, and advised that it would pay Metro upon receipt of the *1152 money owed it by Mart, relying on the “pay when paid” provisions of the (contract).” Further, defendant admits it did not advise Metro that it would not pay the claim and would, in fact, use the defense of prescription until December 9, 1988. Under the circumstances of this case we find the admissions of repeated acknowledgment of the debt and the intention to pay in accordance with the contract sufficient to defeat the defense of prescription.
For the foregoing reasons the judgment of the trial court is affirmed.
AFFIRMED.

. Southern States Masonry, Inc. v. J.A. Jones Const. & Fidelity & Deposit Company of Maryland, 498 So.2d 151 (La.App. 5 Cir.) writ granted 500 So.2d 413, Dorman Strahan v. Landis Const. Co., Inc. & USF & G, 499 So.2d 417 (La.App. 4 Cir.) writ granted 500 So.2d 414.

. Southern Sts. Masonry v. J.A. Jones Const., 507 So.2d 198 (La.1987).